859 So.2d 1181 (2002)
Ex parte Bobby Wayne WALDROP.
(In re Bobby Wayne Waldrop v. State of Alabama.)
1001194.
Supreme Court of Alabama.
November 22, 2002.
Rehearing Denied April 11, 2003.
*1183 Richard K. Keith of Keith & Hamm, P.C., Montgomery; and Kathleen B. Morris of Morris & McDermott, L.L.C., Montgomery, for petitioner.
William H. Pryor, Jr., atty. gen., and James R. Houts, Beth Jackson Hughes, and Tracy Daniel, asst. attys. gen., for respondent.
Bryan A. Stevenson and Randall S. Susskind, Montgomery, for amicus curiae Equal Justice Initiative of Alabama, on behalf of the petitioner.
Vader A. (Al) Pennington, Mobile, for amicus curiae Alabama Criminal Defense Lawyers Association, in support of the petitioner.
*1184 Thomas W. Sorrells, Montgomery, for amicus curiae Alabama District Attorneys Association, in support of the respondent.
BROWN, Justice.
The petitioner, Bobby Wayne Waldrop, was convicted of three counts of capital murder: two counts of murder made capital because it was committed during a robbery in the first degree, see Ala.Code 1975, § 13A-5-40(a)(2), and one count of murder made capital because two or more persons were murdered by one act or pursuant to one scheme or course of conduct, see Ala.Code 1975, § 13A-5-40(a)(10). On April 25, 2002, this Court granted Waldrop's petition for certiorari review to determine whether the trial court's sentencing order stated sufficient reasons for overriding the jury's recommendation of life imprisonment without the possibility of parole, as required by this Court's instructions in Ex parte Taylor, 808 So.2d 1215 (Ala.2001), cert. denied, 534 U.S. 1086, 122 S.Ct. 824, 151 L.Ed.2d 705 (2002). On June 24, 2002, the United States Supreme Court issued its decision in Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002). This Court then ordered the parties to submit supplemental briefs addressing the impact of Ring and invited the Equal Justice Initiative of Alabama, the Alabama District Attorneys Association, and the Alabama Criminal Defense Lawyers Association to file amicus curiae briefs on the same issues.[1] Oral arguments on the case were heard on September 10, 2002. We affirm.

Facts and Procedural History
The evidence at trial revealed the following. Waldrop and his wife, Clara, resided with Waldrop's grandparents, Sherrell Prestridge and Irene Prestridge. Sherrell had heart and hip problems and had difficulty walking. Irene was bedridden, blind, and suffered from diabetes. Because of the Prestridges' numerous medical problems, the living room of their house had been converted into a bedroom with two hospital beds. Testimony at trial indicated that Waldrop knew that his grandmother and grandfather received Social Security checks before the third day of each month.
Between 10:30 a.m. and 2:00 p.m. on April 5, 1998, Waldrop and Clara left the Prestridges' house and checked into a hotel in Anniston. That same day, Waldrop and Clara pawned Sherrell's lawn mower and Waldrop smoked an undetermined amount of crack cocaine. Later that evening, Waldrop and Clara returned to the Prestridges' house. Testimony at trial indicated that Waldrop was not high on crack cocaine when he and Clara returned to the house. While Waldrop was in his grandparents' bedroom, Waldrop and Sherrell began arguing over money. In a statement Waldrop made to the police, which was introduced at trial, Waldrop stated:
"I went into the kitchen and got the knife and [came] back. [Sherrell] pushed me and he saw the knife and that's when I [swung] the knife at his *1185 throat and he started to bleed from the throat real bad. [Sherrell] was at the foot of the bed and I started to stab him and I had the knife in my left hand and I cut myself in the hand. I got on top of him [on] the floor and started to choke him, and he wouldn't stop breathing, so I cut a little more on both sides of his neck. It was [too] late. I stuck the knife into his back and I figured it would hit his lungs and he'd stop breathing. I just wanted to finish what I started. It looked like he was suffering."
(C. 183.) Sherrell suffered 43 stab wounds to his head, neck, back, and chest; he died as a result of his injuries.
Waldrop's grandmother, Irene, had been lying in her bed in the same room while Waldrop attacked his grandfather. She heard Waldrop kill her husband, and she was screaming throughout the incident. After he killed Sherrell, Waldrop instructed Clara to kill Irene. Clara cut and stabbed Irene twice. Waldrop then took the knife from Clara. Testimony at trial indicated that Irene told Waldrop that she loved him before he placed a pillow over her face and stabbed her in the chest, throat, and shoulders until she died. Irene suffered a total of 38 stab and cut wounds. Waldrop and Clara took Sherrell's wallet, and they left to buy drugs, ultimately driving to Georgia where they were apprehended.
Waldrop was charged with two counts of murder made capital because the murder was committed during a robbery in the first degree and one count of murder made capital because two or more persons were murdered by one act or pursuant to one scheme or course of conduct. At trial, the jury found Waldrop guilty of all three counts. Subsequently, the trial court conducted a sentencing hearing pursuant to Ala.Code 1975, § 13A-5-46. After the sentencing hearing, the jury, by a vote of 10-2, recommended that Waldrop be sentenced to life imprisonment without the possibility of parole. Circuit Judge Dale Segrest overrode the jury's recommendation and sentenced Waldrop to death.
Waldrop appealed to the Court of Criminal Appeals, which, on June 30, 2000, remanded the case for the trial court to reweigh the mitigating circumstances and the aggravating circumstances and to issue a new sentencing order. Waldrop v. State, 859 So.2d 1138 (Ala.Crim.App.2000). The trial court complied and issued a revised sentencing order, again sentencing Waldrop to death.
On return to remand, the Court of Criminal Appeals noted:
"Our review of the record indicates that the trial court found the existence of two statutory aggravating circumstances in Waldrop's case: (1) that the murders were committed during the course of a robbery in the first degree, see § 13A-5-49(4), Ala.Code 1975; and (2) that the murders were especially heinous, atrocious, or cruel when compared to other capital offenses, see § 13A-5-49(8), Ala.Code 1975. The trial court found the existence of two statutory mitigating circumstances: (1) that Waldrop had no significant history of prior criminal activity, see § 13A-5-51(1), Ala.Code 1975; and (2) that Waldrop was 19 years old at the time of the offenses, see § 13A-5-51(7), Ala.Code 1975. The trial court did not find the existence of any nonstatutory mitigating circumstances."
Waldrop v. State, 859 So.2d 1138, 1174 (opinion on return to remand). On return to remand, the Court of Criminal Appeals unanimously affirmed Waldrop's conviction and sentence.

*1186 Discussion

I.
Waldrop claims that the United States Supreme Court's opinions in Ring v. Arizona, supra, and Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), mandate that any factual determination required for imposition of the death penalty must be made by the jury, not by the trial court.
In Apprendi, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Apprendi, 530 U.S. at 490, 120 S.Ct. 2348. In Ring v. Arizona, the Supreme Court tested this principle against Arizona's death-penalty scheme. The defendant in that case, Ring, was convicted of felony murder for a murder that occurred in the course of a robbery:
"Under Arizona law, Ring could not be sentenced to death, the statutory maximum penalty for first-degree murder, unless further findings were made. The State's first-degree murder statute prescribes that the offense `is punishable by death or life imprisonment as provided by § 13-703.' Ariz.Rev.Stat. Ann. § 13-1105(C) (West 2001). The cross-referenced section, § 13-703, directs the judge who presided at trial to `conduct a separate sentencing hearing to determine the existence or nonexistence of [certain enumerated] circumstances ... for the purpose of determining the sentence to be imposed.' § 13-703(C) (West Supp.2001). The statute further instructs: `The hearing shall be conducted before the court alone. The court alone shall make all factual determinations required by this section or the constitution of the United States or this state.' Ibid.

"At the conclusion of the sentencing hearing, the judge is to determine the presence or absence of the enumerated `aggravating circumstances' and any `mitigating circumstances.' The State's law authorizes the judge to sentence the defendant to death only if there is at least one aggravating circumstance and `there are no mitigating circumstances sufficiently substantial to call for leniency.' § 13-703(F)."
Ring, 536 U.S. at 592-93, 122 S.Ct. at 2434-35 (footnotes omitted; alterations and omissions in original). The trial court had held a sentencing hearing, in which it heard evidence not previously heard by the jury, including the testimony of one of Ring's accomplices. After the hearing, the trial court rendered a special verdict in which it found that Ring had shot and killed the victim. It also determined that two aggravating circumstances existed: (1) that "Ring committed the offense in expectation of receiving something of `pecuniary value,'" and (2) that "the offense was committed `in an especially heinous, cruel or depraved manner.'" 536 U.S. at 594, 122 S.Ct. at 2435. After determining that the mitigating circumstance in the case Ring's "minimal" criminal recorddid not call for leniency, the trial court sentenced Ring to death. 536 U.S. at 595, 122 S.Ct. at 2435.
On appeal, Ring claimed that, under Apprendi, the trial court in his case could not determine the existence of facts that could elevate his possible punishment to death. The State of Arizona, on the other hand, argued that Ring's sentence did not run afoul of Apprendi because "Ring was convicted of first-degree murder, for which Arizona law specifies `death or life imprisonment' as the only sentencing options ... Ring was therefore sentenced within the range of punishment authorized by the jury verdict." Ring, 536 U.S. at 603, 122 *1187 S.Ct. at 2440. The Supreme Court held, however, that the relevant inquiry in such a situation "`is one not of form, but of effect.'" 536 U.S. at 602, 122 S.Ct. at 2439 (quoting Apprendi, 530 U.S. at 494, 120 S.Ct. 2348).
"In effect, `the required finding [of an aggravated circumstance] expose[d] [Ring] to a greater punishment than that authorized by the jury's guilty verdict.' [Apprendi, 530 U.S. at 494, 120 S.Ct. 2348]; see [State v. Ring] 200 Ariz. [267], at 279, 25 P.3d [1139], at 1151 [ (2001) ]. The Arizona first-degree murder statute `authorizes a maximum penalty of death only in a formal sense,' Apprendi, 530 U.S., at 541, 120 S.Ct. 2348 (O'Connor, J., dissenting), for it explicitly cross-references the statutory provision requiring the finding of an aggravating circumstance before imposition of the death penalty. See § 13-1105(C) (`First degree murder is a class 1 felony and is punishable by death or life imprisonment as provided by § 13-703.' (emphasis added)).
"If Arizona prevailed on its opening argument, Apprendi would be reduced to a `meaningless and formalistic' rule of statutory drafting. See 530 U.S., at 541, 120 S.Ct. 2348 (O'Connor, J., dissenting)."
Ring, 536 U.S. at 604, 122 S.Ct. at 2440-41 (some alterations in original).
The Supreme Court thus overruled Walton v. Arizona, 497 U.S. 639, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990), in which it had previously upheld Arizona's sentencing scheme, "to the extent that it allows a sentencing judge, sitting without a jury, to find an aggravating circumstance necessary for imposition of the death penalty." Ring, 536 U.S. at 609, 122 S.Ct. at 2443. Furthermore, "[b]ecause Arizona's enumerated aggravating factors operate as `the functional equivalent of an element of a greater offense,'" the Sixth Amendment required those factors to be found by a jury. Id. (quoting Apprendi, 530 U.S. at 494 n. 19, 120 S.Ct. 2348). Because the trial judge, and not the jury, undertook the "factfinding necessary" to put Ring to death, the Supreme Court reversed the judgment of the Arizona Supreme Court. Id.

A.
Waldrop argues that under Alabama law a defendant cannot be sentenced to death unless, after an initial finding that the defendant is guilty of a capital offense, there is a second finding: (1) that at least one statutory aggravating circumstance exists, see Ala.Code 1975, § 13A-5-45(f), and (2) that the aggravating circumstances outweigh the mitigating circumstances, see Ala.Code 1975, § 13A-5-46(e)(3). Those determinations, Waldrop argues, are factual findings that under Ring must be made by the jury and not the trial court. Because, Waldrop argues, the trial judge in his case, and not the jury, found that two aggravating circumstances existed and that those aggravating circumstances outweighed the mitigating circumstances, Waldrop claims that his Sixth Amendment right to a jury trial was violated. We disagree.
It is true that under Alabama law at least one statutory aggravating circumstance under Ala.Code 1975, § 13A-4-49, must exist in order for a defendant convicted of a capital offense to be sentenced to death. See Ala.Code 1975, § 13A-5-45(f)("Unless at least one aggravating circumstance as defined in Section 13A-5-49 exists, the sentence shall be life imprisonment without parole."); Johnson v. State, 823 So.2d 1, 52 (Ala.Crim.App.2001) (holding that in order to sentence a capital defendant to death, the sentencer "`must determine the existence of at least one of *1188 the aggravating circumstances listed in [Ala.Code 1975,] § 13A-5-49'" (quoting Ex parte Woodard, 631 So.2d 1065, 1070 (Ala.Crim.App.1993))). Many capital offenses listed in Ala.Code 1975, § 13A-5-40, include conduct that clearly corresponds to certain aggravating circumstances found in § 13A-5-49:
"For example, the capital offenses of intentional murder during a rape, § 13A-5-40(a)(3), intentional murder during a robbery, § 13A-5-40(a)(2), intentional murder during a burglary, § 13A-5-40(a)(4), and intentional murder during a kidnapping, § 13A-5-40(a)(1), parallel the aggravating circumstance that `[t]he capital offense was committed while the defendant was engaged... [in a] rape, robbery, burglary or kidnapping,' § 13A-5-49(4)."

Ex parte Woodard, 631 So.2d at 1070-71 (alterations and omission in original).
Furthermore, when a defendant is found guilty of a capital offense, "any aggravating circumstance which the verdict convicting the defendant establishes was proven beyond a reasonable doubt at trial shall be considered as proven beyond a reasonable doubt for purposes of the sentencing hearing." Ala.Code 1975, § 13A-5-45(e); see also Ala.Code 1975, § 13A-5-50 ("The fact that a particular capital offense as defined in Section 13A-5-40(a) necessarily includes one or more aggravating circumstances as specified in Section 13A-5-49 shall not be construed to preclude the finding and consideration of that relevant circumstance or circumstances in determining sentence."). This is known as "double-counting" or "overlap," and Alabama courts "have repeatedly upheld death sentences where the only aggravating circumstance supporting the death sentence overlaps with an element of the capital offense." Ex parte Trawick, 698 So.2d 162, 178 (Ala.1997); see also Coral v. State, 628 So.2d 954, 965 (Ala.Crim.App. 1992).[2]
Because the jury convicted Waldrop of two counts of murder during a robbery in the first degree, a violation of Ala.Code 1975, § 13A-5-40(a)(2), the statutory aggravating circumstance of committing a capital offense while engaged in the commission of a robbery, Ala.Code 1975, § 13A-5-49(4), was "proven beyond a reasonable doubt." Ala.Code 1975, § 13A-5-45(e); Ala.Code 1975, § 13A-5-50. Only one aggravating circumstance must exist in order to impose a sentence of death. Ala.Code 1975, § 13A-5-45(f). Thus, in Waldrop's case, the jury, and not the trial judge, determined the existence of the "aggravating circumstance necessary for imposition of the death penalty." Ring, 536 U.S. at 609, 122 S.Ct. at 2443. Therefore, the findings reflected in the jury's verdict alone exposed Waldrop to a range of punishment that had as its maximum the death penalty. This is all Ring and Apprendi require.

B.
Waldrop also claims that Ring and Apprendi require that the jury, and not the trial court, determine whether the aggravating circumstances outweigh the mitigating circumstances. See Ala.Code 1975, *1189 §§ 13A-5-46(e), 13A-5-47(e), and 13A-5-48. Specifically, Waldrop claims that the weighing process is a "finding of fact" that raises the authorized maximum punishment to the death penalty. Waldrop and several of the amici curiae claim that, after Ring, this determination must be found by the jury to exist beyond a reasonable doubt. Because in the instant case the trial judge, and not the jury, made this determination, Waldrop claims his Sixth Amendment rights were violated.
Contrary to Waldrop's argument, the weighing process is not a factual determination. In fact, the relative "weight" of aggravating circumstances and mitigating circumstances is not susceptible to any quantum of proof. As the United States Court of Appeals for the Eleventh Circuit noted, "While the existence of an aggravating or mitigating circumstance is a fact susceptible to proof under a reasonable doubt or preponderance standard ... the relative weight is not." Ford v. Strickland, 696 F.2d 804, 818 (11th Cir.1983). This is because weighing the aggravating circumstances and the mitigating circumstances is a process in which "the sentencer determines whether a defendant eligible for the death penalty should in fact receive that sentence." Tuilaepa v. California, 512 U.S. 967, 972, 114 S.Ct. 2630, 129 L.Ed.2d 750 (1994). Moreover, the Supreme Court has held that the sentencer in a capital case need not even be instructed as to how to weigh particular facts when making a sentencing decision. See Harris v. Alabama, 513 U.S. 504, 512, 115 S.Ct. 1031, 130 L.Ed.2d 1004 (1995) (rejecting "the notion that `a specific method for balancing mitigating and aggravating factors in a capital sentencing proceeding is constitutionally required'" (quoting Franklin v. Lynaugh, 487 U.S. 164, 179, 108 S.Ct. 2320, 101 L.Ed.2d 155 (1988)) and holding that "the Constitution does not require a State to ascribe any specific weight to particular factors, either in aggravation or mitigation, to be considered by the sentencer").
Thus, the weighing process is not a factual determination or an element of an offense; instead, it is a moral or legal judgment that takes into account a theoretically limitless set of facts and that cannot be reduced to a scientific formula or the discovery of a discrete, observable datum. See California v. Ramos, 463 U.S. 992, 1008, 103 S.Ct. 3446, 77 L.Ed.2d 1171 (1983) ("Once the jury finds that the defendant falls within the legislatively defined category of persons eligible for the death penalty, ... the jury[3] then is free to consider a myriad of factors to determine whether death is the appropriate punishment."); Zant v. Stephens, 462 U.S. 862, 902, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983) (Rehnquist, J., concurring in the judgment) ("sentencing decisions rest on a far-reaching inquiry into countless facts and circumstances and not on the type of proof of particular elements that returning a conviction does").
In Ford v. Strickland, supra, the defendant claimed that "the crime of capital murder in Florida includes the element of mitigating circumstances not outweighing aggravating circumstances and that the capital sentencing proceeding in Florida involves new findings of fact significantly affecting punishment." Ford, 696 F.2d at 817. The United States Court of Appeals for the Eleventh Circuit rejected this argument, holding that "aggravating and mitigating circumstances are not facts or *1190 elements of the crime. Rather, they channel and restrict the sentencer's discretion in a structured way after guilt has been fixed." 696 F.2d at 818. Furthermore, in addressing the defendant's claim that the State must prove beyond a reasonable doubt that the aggravating circumstances outweighed the mitigating circumstances, the court stated that the defendant's argument
"seriously confuses proof of facts and the weighing of facts in sentencing. While the existence of an aggravating or mitigating circumstance is a fact susceptible to proof under a reasonable doubt or preponderance standard, see State v. Dixon, 283 So.2d 1, 9 (Fla.1973), cert. denied, 416 U.S. 943, 94 S.Ct. [1950], 40 L.Ed.2d 295 (1974), and State v. Johnson, 298 N.C. 47, 257 S.E.2d 597, 617-18 (1979), the relative weight is not. The process of weighing circumstances is a matter for judge and jury, and, unlike facts, is not susceptible to proof by either party."
696 F.2d at 818. Alabama courts have adopted the Eleventh Circuit's rationale. See Lawhorn v. State, 581 So.2d 1159, 1171 (Ala.Crim.App.1990)("while the existence of an aggravating or mitigating circumstance is a fact susceptible to proof, the relative weight of each is not; the process of weighing, unlike facts, is not susceptible to proof by either party"); see also Melson v. State, 775 So.2d 857, 900-901 (Ala.Crim.App.1999); Morrison v. State, 500 So.2d 36, 45 (Ala.Crim.App. 1985).
Thus, the determination whether the aggravating circumstances outweigh the mitigating circumstances is not a finding of fact or an element of the offense. Consequently, Ring and Apprendi do not require that a jury weigh the aggravating circumstances and the mitigating circumstances.

C.
Waldrop claims that the trial court's determination that the murders were especially heinous, atrocious, or cruel as compared to other capital offensesan aggravating circumstance under Ala.Code 1975, § 13A-5-49(8)is a factual determination that under Ring must be made by the jury. However, Ring and Apprendi do not require that the jury make every factual determination; instead, those cases require the jury to find beyond a reasonable doubt only those facts that result in "an increase in a defendant's authorized punishment ..." or "`expose[ ] [a defendant] to a greater punishment....'" Ring, 536 U.S. at 602, 604, 122 S.Ct. at 2439, 2440 (quoting Apprendi, 530 U.S. at 494, 120 S.Ct. 2348). Alabama law requires the existence of only one aggravating circumstance in order for a defendant to be sentenced to death. Ala.Code 1975, § 13A-5-45(f). The jury in this case found the existence of that one aggravating circumstance: that the murders were committed while Waldrop was engaged in the commission of a robbery. At that point, Waldrop became "exposed" to, or eligible for, the death penalty. The trial court's subsequent determination that the murders were especially heinous, atrocious, or cruel is a factor that has application only in weighing the mitigating circumstances and the aggravating circumstances, a process that we held earlier is not an "element" of the offense.

II.
Waldrop argues that, contrary to our holding in Ex parte Taylor, supra, the trial court in this case failed to make specific written findings as to what consideration it gave the jury's advisory verdict. In Taylor, the trial court overrode the jury's advisory verdict of life imprisonment *1191 without the possibility of parole and sentenced the defendant to death. On appeal, the defendant argued that the trial judge's override of the jury's recommendation was unconstitutional because, the defendant argued, "there is no standard to guide the trial judge in determining whether to accept or to reject the jury's recommended sentence." Taylor, 808 So.2d at 1217 (footnote omitted). We rejected this argument, noting that the United States Supreme Court had held in Harris v. Alabama, supra, "`that the Eighth Amendment does not require the State to define the weight the sentencing judge must accord an advisory jury verdict.'" Taylor, 808 So.2d at 1218 (quoting Harris, 513 U.S. at 512, 115 S.Ct. 1031). Although not required by Harris, we noted that Alabama's statutory procedures did guard against an arbitrary and capricious decision by a trial court in this situation:
"This Court held in Ex parte Jones, 456 So.2d 380 (Ala.1984), that the Constitution of the United States does not require the `[adoption of] specific limitations on the trial court's power to override the jury's advisory verdict' and that Alabama's capital-sentencing procedure provides sufficient protection for capital defendants because `[t]he whole catalog of aggravating circumstances must outweigh mitigating circumstances before a trial court may opt to impose the death penalty by overriding the jury's recommendation' of life imprisonment. 456 So.2d at 382. Under Alabama's capital-sentencing procedure, the trial judge must make specific written findings regarding the existence or nonexistence of each aggravating circumstance and each mitigating circumstance offered by the parties. § 13A-5-47(d), Ala.Code 1975. In making these findings, the trial judge must consider a jury's recommendation of life imprisonment without parole. See § 13A-5-47(e), Ala.Code 1975 (`in [weighing the aggravating and mitigating circumstances] the trial court shall consider the recommendation of the jury contained in its advisory verdict'). Construing subsection (e) together with subsection (d), we conclude that the trial judge must state specific reasons for giving the jury's recommendation the consideration he gave it. McCausland v. Tide-Mayflower Moving & Storage, 499 So.2d 1378, 1382 (Ala.1986) (stating that subsections of a statute `should be construed together to ascertain the meaning and intent of each'). Therefore, we hold that Alabama's capital-sentencing procedure does not result in the imposition of the death sentence in an arbitrary and capricious manner in violation of the Fourteenth Amendment."
Taylor, 808 So.2d at 1219 (footnote omitted) (alterations in original).
Taylor was decided after the trial court in Waldrop's case entered its revised sentencing order on remand from the Court of Criminal Appeals, and after the Court of Criminal Appeals affirmed the trial court's order. In post-Taylor cases where the trial court fails sufficiently to state its reasons for overriding a jury's advisory verdict, this Court and the Court of Criminal Appeals have generally remanded the case to allow the trial court to enter a revised sentencing order. See Ex parte Carroll, 852 So.2d 821 (Ala.2001); Lee v. State, [Ms. CR-00-0084, October 26, 2001] ___ So.2d ___ (Ala.Crim.App.2001); Dorsey v. State, [Ms. CR-97-1522, May 25, 2001] ___ So.2d ___(Ala.Crim.App.2001).
A remand to the trial court is not an option in this case, however, because the trial judge, Judge Dale Segrest, is no longer *1192 on the bench.[4] Instead, the case would be assigned to a circuit judge who is unfamiliar with the case and who cannot possibly supply Judge Segrest's "specific reasons for giving the jury's recommendation the consideration [Judge Segrest] gave it." 808 So.2d at 1219. Because a remand is not possible, and in order to ensure that the death penalty in this case was not imposed in an arbitrary and capricious manner, this Court must perform its own review of the propriety of the death sentence and determine whether the aggravating circumstances outweigh the mitigating circumstances.
The murders in this case were committed while Waldrop was engaged in a robbery, an aggravating circumstance found by the jury to exist. Waldrop knew that his grandparents received their Social Security benefit checks at the beginning of the month and that Sherrell often kept cash on his person. Waldrop attacked and killed both Sherrell and Irene after arguing with Sherrell over money. Waldrop and Clara then took Sherrell's wallet, bought drugs, and fled to another state.
The murders were also especially heinous, atrocious, or cruel, as compared to other capital cases, another aggravating circumstance. The victims were elderly and in poor health. They suffered numerous, repeated stab and cut wounds in the attack. As Sherrell lay dying, Waldrop choked Sherrell and cut the sides of his already slashed throat. When this did not result in immediate death, Waldrop stabbed Sherrell in the back in an attempt to puncture a lung.
Irene, who was bedridden and blind, was in the room while Waldrop attacked Sherrell and was forced to listen to her grandson viciously stab and strangle her husband to death. She then lay helpless while her grandson ordered Clara to stab her. Before Waldrop stabbed her to death, Irene told Waldrop that she loved him.
We have held that a homicide is especially heinous, atrocious, or cruel when it is "conscienceless or pitiless" and "unnecessarily torturous to the victim." Ex parte Kyzer, 399 So.2d 330, 334 (Ala.1981). We agree with the Court of Criminal Appeals that the record "more than adequately establishes that, when compared to other capital offenses, the capital murders in this case were especially heinous, atrocious, or cruel." Waldrop v. State, 859 So.2d at 1180 (opinion on return to remand). See Hocker v. State, 840 So.2d 197, 220 (Ala. Crim.App.2002) (murder where the defendant stabbed the victim, then repeatedly beat the victim while the victim was incapacitated was especially heinous, atrocious, or cruel); Broadnax v. State, 825 So.2d 134 (Ala.Crim.App.2002) (upholding the determination that two murders in which the victims were stabbed while lying helpless on the ground and where one victim saw the other victim, his grandmother, being beaten, was especially heinous, atrocious, or cruel); Price v. State, 725 So.2d 1003 (Ala.Crim.App.1997) (where evidence indicated that the victim was repeatedly stabbed and that he witnessed an attack on his spouse, the trial court did not err in determining that the offense was especially heinous, atrocious, or cruel); Barbour v. State, 673 So.2d 461 (Ala.Crim.App.1994) (where evidence indicated that the victim was stabbed and that she suffered before her death, the offense was especially heinous, atrocious, or cruel); McNair v. State, 653 So.2d 347, 349 (Ala.Crim.App. 1993) (holding a murder to be "conscienceless, pitiless, and unnecessarily torturous" *1193 where the victim was strangled and repeatedly stabbed).
The trial court concluded that the aggravating circumstances outweighed the mitigating circumstances in this case, i.e., Waldrop's age and the lack of a criminal history. While it is true that Waldrop had no significant prior criminal history and that he was 19 at the time of the murders, those circumstances pale in comparison to the aggravating circumstances, especially in light of the brutal nature of the crime. Thus, we conclude that the trial court gave the mitigating circumstances the correct weight.
We agree with the conclusion reached by the Court of Criminal Appeals:
"After carefully reviewing the record of the guilt phase, the penalty phase, and the sentencing phase of Waldrop's trial, we find no evidence that the sentence was imposed under the influence of passion, prejudice, or any other arbitrary factor. We conclude that the findings and conclusions of the trial court are abundantly supported by the evidence. We have independently weighed the aggravating circumstances against the statutory and nonstatutory mitigating circumstances, and we concur in the trial court's judgment that death is the appropriate sentence in this case. Considering the crimes committed by Waldrop, we find that the sentence of death is neither excessive nor disproportionate to the penalty imposed in similar cases." 859 So.2d at 1181 (opinion on return to remand).
AFFIRMED.
MOORE, C.J., and HOUSTON[*] and HARWOOD, JJ., concur.
STUART, J., concurs specially.
SEE, LYONS, JOHNSTONE, and WOODALL, JJ., concur in part and dissent in part.
STUART, Justice (concurring specially).
I concur with the main opinion. I write to explain why I believe the United States Supreme Court's holding in Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), when read in conjunction with Harris v. United States, 536 U.S. 545, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002) (issued the same day as Ring), does not invalidate Alabama's capital-punishment scheme, regardless of whether one of the aggravated circumstances enumerated in § 13A-5-49, Ala.Code 1975, is found by a trial judge rather than by a jury beyond a reasonable doubt.
The holding of the United States Supreme Court in Ring is based on the premise that all capital defendants "are entitled to a jury determination of any fact on which the legislature conditions an increase in their maximum punishment." Ring, 536 U.S. at 589, 122 S.Ct. at 2432 (emphasis added). See Apprendi v. New Jersey, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) ("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."). See also Harris, 536 U.S. at 567, 122 S.Ct. at 2419 ("Read together, McMillan [v. Pennsylvania, 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986)] and Apprendi mean that those facts setting the outer limits of a sentence, and of the judicial power to impose it, are the elements of the crime for the purposes of the constitutional analysis.").
*1194 Unlike the Arizona capital-sentencing scheme, which creates the substantive offense of capital murder only after a jury convicts a defendant of first-degree murder and the trial courtwithout the jury makes certain findings that elevate the murder to a capital offense, the Alabama statutory scheme defines the substantive offenses of capital murder in § 13A-5-40, Ala.Code 1975. That statute identifies certain intentional murders that, when committed in conjunction with certain aggravating factors, are considered by the people of this State to be so reprehensible that if a jury finds a defendant guilty beyond a reasonable doubt of one of those offenses, the maximum punishment the defendant can receive based on the jury's guilt-phase verdict is death. For example, the Alabama Legislature has determined that the act of "murder when the victim is less than fourteen years of age" is a capital offense and that the maximum authorized punishment for a defendant convicted of that offense is death, see § 13A-5-40(15), Ala.Code 1975. Thus, a jury finding a defendant guilty beyond a reasonable doubt of capital murder under § 13A-5-40(15), Ala.Code 1975, makes a finding that the defendant is guilty not only of murder but also of an aggravating factor (i.e., the victim was less that 14 years old) that increases the maximum statutorily prescribed punishment for the offense to death. The jury's verdict during the guilt phase in a capital trial meets the procedural mandates of Apprendi and Ring, and establishes that the maximum statutorily prescribed punishment for the capital offense is death. In his special concurrence in Ring, Justice Scalia stated:
"What today's decision says is that the jury must find the existence of the fact that an aggravating factor existed. Those States that leave the ultimate life-or-death decision to the judge may continue to do soby requiring a prior jury finding of [an] aggravating factor in the sentencing phase or, more simply, by placing the aggravating-factor determination (where it logically belongs anyway) in the guilt phase."
536 U.S. at 612, 122 S.Ct. at 2445. Alabama's statutory scheme complies with the second alternative suggested by Justice Scalia.
In Alabama, a defendant charged with a capital offense pursuant to § 13A-5-40 is informed in the indictment of the elements of the capital offense and, consequently, is informed that if a jury finds the defendant guilty beyond a reasonable doubt of the offense, the maximum statutorily prescribed punishment that may be imposed is death. When an Alabama jury is selected to sit in a capital-murder trial, the jury is "death-qualified." See Wright v. State, 494 So.2d 745 (Ala. 1986), citing Lockhart v. McCree, 476 U.S. 162, 106 S.Ct. 1758, 90 L.Ed.2d 137 (1986), and Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). Thus, the jury, like the defendant, is informed before the trial begins that if it finds the defendant guilty beyond a reasonable doubt of the charged capital offense (i.e., intentional murder with an aggravating factor), the maximum possible punishment the defendant may receive for the capital conviction, if such a sentence is deemed appropriate, is death. Indeed, prospective jurors are disqualified if they are unable to set aside their personal biases and prejudices with regard to capital sentencing and determine guilt based on the facts presented at the trial. Ex parte Smith, 698 So.2d 219 (Ala.1997). Consequently, in accordance with Apprendi and Ring, when a jury finds a defendant guilty of a capital offense as defined in § 13A-5-40, the jury's verdict establishes that the maximum statutorily prescribed sentence the defendant may receive for the capital conviction is death. By finding a *1195 defendant guilty of the capital offense during the guilt phase, an Alabama jury makes the factual determinations that an intentional murder occurred, that an aggravating factor was present, and that the defendant is eligible for the maximum punishment for the offensedeath.
It appears to me that confusion arises because a defendant convicted in Alabama of a capital offense is provided with additional due process through a sentencing-phase hearing before a jury. The fact that the Alabama statutory scheme allows a jury to hear evidence of the aggravating circumstances and the mitigating circumstances to determine the propriety of a death sentence and to recommend whether the maximum punishment of death is warranted does not obviate the fact that the jury's verdict of guilty of capital murder in the guilt phase establishes the potential for the imposition of the death penalty. Consequently, it appears to me that Alabama's capital-punishment scheme, regardless of whether the aggravating circumstances enumerated in § 13A-5-49, Ala.Code 1975, are found beyond a reasonable doubt by a jury, meets the procedural mandates of Apprendi and Ring. Indeed, our scheme appears to be exactly what the Supreme Court envisioned when it stated:
"`Neither the cases cited, nor any other case, permits a judge to determine the existence of a factor which makes a crime a capital offense. What the cited cases hold is that, once a jury has found the defendant guilty of all the elements of an offense which carries as its maximum penalty the sentence of death, it may be left to the judge to decide whether that maximum penalty, rather than a lesser one, ought to be imposed.... The person who is charged with actions that expose him to the death penalty has an absolute entitlement to jury trial on all the elements of the charge.'"
Apprendi, 530 U.S. at 497, 120 S.Ct. 2348 (quoting Almendarez-Torres v. United States, 523 U.S. 224, 257 n. 2, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998)).
The Court's observations in Apprendi, as well as its explanation in Ring for those observations, indicate that the United States Supreme Court views a statutory scheme "requiring judges, after a jury verdict holding a defendant guilty of a capital crime, to find specific aggravating factors before imposing a sentence of death" to be in compliance with Apprendi. 530 U.S. at 496, 120 S.Ct. 2348. In Alabama, the trial court's finding of an aggravating circumstance enumerated in § 13A-5-49 during the penalty phase does not elevate the defendant's punishment; it merely explains why the punishment is justified. The enumerated aggravating circumstances in § 13A-5-49 do not operate as "the functional equivalent of an element of a greater offense," 530 U.S. at 494 n. 19, 120 S.Ct. 2348, but as sentencing factors to be considered by the trial court. See McMillan v. Pennsylvania, 477 U.S. 79, 87-88, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986). See also Harris, supra. Indeed, the trial court's finding of the aggravating circumstance during the penalty phase and the determination of whether the aggravating circumstance outweighs any mitigating circumstances establishes the propriety of the imposition of a death sentence. This process limits the trial court's choice of sentence; it does not create a greater substantive offense.
I acknowledge that in Ring, the United States Supreme Court uses the term "aggravating circumstance" and repeatedly states that the jury must find the existence of an "aggravating circumstance" to impose the death sentence. However, a review of Apprendi and its progeny indicates that the United States Supreme *1196 Court's holdings in this regard are directed at the scheme pursuant to which a jury finds a defendant guilty of the substantive offense and then evaluates factors that, if found to exist, would elevate the offense to a capital offense. Apprendi and Ring do not require that a jury determine the propriety of a sentence. Indeed, to hold otherwise would expand the procedural requirements of Apprendi and Ring to require two findings by the juryone finding the defendant guilty beyond a reasonable doubt of the offense, which includes an aggravating factor, that carries with it the maximum punishment of death and a subsequent finding beyond a reasonable doubt during the penalty phase of an additional aggravating circumstance to justify the propriety of the imposition of a death sentence.
The Alabama Legislature, by clearly defining the elements of capital offenses and the maximum applicable punishment for a capital conviction, created a statutory scheme that provides the procedural protections mandated by Apprendi and its progeny in the guilt phase and a scheme that adequately channels the trial court's discretion to prevent the arbitrary imposition of the maximum punishment of death in the penalty phase.
SEE, Justice (concurring in part and dissenting in part).
I concur in part I of the majority opinion, which holds that the jury found the existence of a statutory aggravating circumstance necessary for the imposition of the death sentence in Waldrop's case as required under Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), and Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). I must dissent, however, from part II of the majority opinion, in which this Court makes its own finding that the aggravating circumstances in this case outweigh the mitigating circumstances, instead of remanding this case for the trial court to make such a determination.
Ex parte Taylor, 808 So.2d 1215, 1219 (2001), requires "that the trial judge must state specific reasons for giving the jury's recommendation the consideration he gave it." As the majority opinion acknowledges, the trial judge in this case did not do so. Accordingly, as this Court has done in other post-Taylor cases, we should remand this case for the trial court to enter a revised sentencing order. I do not disagree with the majority's finding that the aggravating circumstances outweigh the mitigating circumstances in this case, and I agree that there may be cases in which it is necessary for this Court to make such a finding. Moreover, I understand that in this case the trial judge is no longer on the bench; however, his successor can review the trial record and, if necessary, call his predecessor as a witness or call any other witness necessary for the successor judge to prepare a revised sentencing order. Because I believe it is better to defer to the trial court wherever possible on matters that are within the scope of the trial court's responsibility, I must respectfully dissent from part II of the majority opinion.
LYONS, Justice (concurring in part and dissenting in part).
I join part I of the main opinion. I write specially to address further Waldrop's contention that the trial court's finding of fact that the capital offense was "especially heinous, atrocious or cruel compared to other capital offenses," § 13A-5-49(8), Ala.Code 1975, violated his right to a trial by jury under the United States Constitution. A plurality of the Justices on the United States Supreme Court in Harris v. United States, 536 U.S. 545, 122 *1197 S.Ct. 2406, 153 L.Ed.2d 524 (2002), released the same day as Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), stated: "Basing a 2-year increase in the defendant's minimum sentence on a judicial finding of brandishing does not evade the requirements of the Fifth and Sixth Amendments." 536 U.S. at 568, 122 S.Ct. at 2420.
A dissenting opinion, joined by three other Justices, observed:
"According to the plurality, the historical practices underlying the Court's decision in Apprendi [v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000),] with respect to penalties that exceed the statutory maximum do not support extension of Apprendi's rule to facts that increase a defendant's mandatory minimum sentence. Such fine distinctions with regard to vital constitutional liberties cannot withstand close scrutiny."
536 U.S. at 574, 122 S.Ct. at 2423. At a later point the dissenting opinion states:
"Thus, it is ultimately beside the point whether as a matter of statutory interpretation brandishing is a sentencing factor, because as a constitutional matter brandishing must be deemed an element of an aggravated offense. See Apprendi, supra, at 483, n. 10, 120 S.Ct. 2348 (`[F]acts that expose a defendant to a punishment greater than that otherwise legally prescribed were by definition "elements" of a separate legal offense')."
536 U.S. at 576, 122 S.Ct. at 2424.
Until the dissenting opinion in Harris becomes the law of the land, I must reject Waldrop's argument that the trial court's finding that the offenses were "especially heinous, atrocious or cruel compared to other capital offenses" is a finding of fact that must be determined by a jury.
As to part II, I respectfully dissent. I would remand to the trial court for further proceedings in light of Ex parte Taylor, 808 So.2d 1215 (Ala.2001), cert. denied, 534 U.S. 1086, 122 S.Ct. 824, 151 L.Ed.2d 705 (2002); and Ex parte Carroll, 852 So.2d 821 (Ala.2001). The fact that the judge who tried this case is no longer in active service should not justify disregard of the necessity for remand. I join Justice Johnstone's thorough review of this issue in his special writing.
WOODALL, J., concurs.
JOHNSTONE, Justice (concurring in part and dissenting in part).
I concur in Part I, which analyzes the application of Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), and Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), to the case now before us. I respectfully dissent, however, from Part II, which invalidly evades the consequences of the failure of the sentencing order to meet the due process requirements recognized in Ex parte Taylor, 808 So.2d 1215, 1219 (Ala.2001).
The brief submitted to us by the State after we issued our writ of certiorari supplies a candid and scholarly introduction to the problem my dissent will address. Thus I will quote the brief of the State at some length:

"ARGUMENT
"WHETHER THE TRIAL COURT'S SENTENCING ORDER OVERRIDING THE JURY'S RECOMMENDATION OF LIFE IMPRISONMENT WITHOUT THE POSSIBILITY OF PAROLE AND SENTENCING WALDROP TO DEATH, WAS SUFFICIENT IN LIGHT OF THIS COURT'S DECISION IN EX PARTE TAYLOR. *1198 "In sentencing Waldrop to death, the trial court overrode the jury's 10 to 2 recommendation of life imprisonment without the possibility of parole. The State has been directed to respond to Waldrop's claim that the trial court's stated reasons for overriding the jury's life recommendation, as set out in its sentencing order and in its revised sentencing order, are not sufficient to comply with the requirements set forth by this Court in Ex parte Taylor, 808 So.2d 1215 (Ala.2001).
"In Ex parte Taylor, this Court held that a judge must make specific findings as to his reasons for `giving the jury's recommendation the consideration he gave it.' This Court specifically said:
"`Under Alabama's capital-sentencing procedure, the trial judge must [state] specific written findings regarding the existence or nonexistence of each aggravating circumstance and each mitigating circumstance offered by the parties. § 13A-5-47(d), Ala.Code 1975. In making these findings, the trial judge must consider a jury's recommendation of life imprisonment without parole. See § 13A-5-47(e), Ala.Code 1975 ("in [weighing the aggravating and mitigating circumstances], the trial court shall consider the recommendation of the jury contained in its advisory verdict"). Construing subsection (e) together with subsection (d), we conclude that the trial judge must state specific reasons for giving the jury's recommendation the consideration he gave it. McCausland v. Tide-Mayflower Moving & Storage, 499 So.2d 1378, 1382 (Ala.1986) (stating that subsections of a statute "should be construed together to ascertain the meaning and intent of each").'
"Ex parte Taylor, 808 So.2d at 1219 (footnote omitted) (in Ex parte Taylor, this Court concluded that the trial court had properly given reasons for overriding the jury's recommendation by stating that `some jurors' outbursts of emotion after they found the defendant guilty of capital murder indicated that they were overwhelmed by their impending duty to consider the death penalty as required by law').
"Since this Court's release of Ex parte Taylor, both this Court and the Court of Criminal Appeals have remanded cases with directions for the trial court to expand its sentencing order to state specific reasons for giving the jury's recommendation the consideration it gave it. See, e.g., Ex parte Carroll, [Ms. 1990908] (Ala.2001, April 20, 2001) (finding that the trial court's statements in its sentencing order that it `had considered the jury recommendation of life without parole' and that `the Court finds that the aggravating [circumstance] outweigh[s] any mitigating circumstances when the jury recommendation of life without parole is taken into consideration' was insufficient to comply with Ex parte Taylor); Dorsey v. State, [Ms. CR-97-1522] (Ala.Crim.App. May 25, 2001) (trial judge's statement that he `had considered the recommendation of the jury' insufficient to comply with Ex parte Taylor); Hodges v. State, [Ms. CR-98-1988] (Ala.Crim.App. March 30, 2001) (trial court's noting in sentencing order that it had `considered the jury's recommendation' not sufficient to comply with Ex parte Taylor); Lee v. State, [Ms. CR-00-0084] (Ala.Crim.App. October 26, 2001) (`although the trial court indicated that it had "given due consideration to the jury's recommendation," it did not state the specific reasons it gave the jury's recommendation the consideration it gave it'); Smith v. State, [Ms. CR-97-1258] (Ala.Crim.App. December *1199 22, 2000) (trial court's stating in its order that it `considered' the jury's recommendation was insufficient to comply with Ex parte Taylor).
"In it's original sentencing order, the trial court stated, in overriding the jury's sentencing recommendation, that it was `fully aware of the jury's recommendation and ha[d] given that recommendation due consideration.' (C. 163.) It concluded its sentencing order by stating, `After giving full measure and weight to each of the aggravating and mitigating circumstances, and taking into account the recommendation of the jury contained in its advisory verdict, it is the judgment of the court that aggravating circumstances outweigh mitigating circumstances shown by the evidence in this case.' (C. 170.)
"In its revised and very detailed sentencing order, the trial court again stated that it was `fully aware of the jury's recommendation and had given that recommendation due consideration.' (Revised sentencing order at p. 2.) The court again concluded that, `After giving full measure and weight to each of the aggravating and mitigating circumstances, and taking into account the recommendation of the jury contained in its advisory verdict, it is the judgment of the court that aggravating circumstances outweigh mitigating circumstances shown by the evidence in this case.' (Revised sentencing order at p. 14.)"
The State argues:
"Although the [trial] court did not state `specific' reasons for giving the jury's recommendation the consideration it gave it, it is implicit in the sentencing order that the court found the gravity and brutality of the offenses, in conjunction with the facts surrounding the murders, in particular the robbery for money to buy cocaine, to clearly outweigh the mitigating circumstances presented by Waldrop. The court gave very detailed reasons for finding the existence or nonexistence of each aggravating and mitigating circumstance, and a thorough explanation of why [the court] assigned the weight [it] did to each of those circumstances."
Nonetheless, the State writes:
"Mindful of this Court's decision in Ex parte Taylor, although not conceding its correctness, the State acknowledges that the trial court used language similar to language found insufficient in other cases...."
The State further writes:
"The State is aware that this Court could, based on the relevant caselaw, conclude that the trial court's sentencing order does not meet the requirements delineated in Ex parte Taylor ...."
The main opinion itself, 859 So.2d at 1191, tacitly acknowledges that the sentencing order does not conform to the due process requirements recognized by Ex parte Taylor.
The main opinion addresses the problem this way:
"Taylor was decided after the trial court in Waldrop's case entered its revised sentencing order on remand from the Court of Criminal Appeals, and after the Court of Criminal Appeals affirmed the trial court's order. In post-Taylor cases where the trial court fails sufficiently to state its reasons for overriding a jury's advisory verdict, this Court and the Court of Criminal Appeals have generally remanded the case to allow the trial court to enter a revised sentencing order. See Ex parte Carroll, 852 So.2d 821 (Ala.2001); Lee v. State, [Ms. CR-00-0084, October 26, 2001] ___ So.2d ___ (Ala.Crim.App.2001); Dorsey v. *1200 State, [Ms. CR-97-1522, May 25, 2001] ___ So.2d ___ (Ala.Crim.App.2001).
"A remand to the trial court is not an option in this case, however, because the trial judge, Judge Dale Segrest, is no longer on the bench. Instead, the case would be assigned to a circuit judge who is unfamiliar with the case and who cannot possibly supply Judge Segrest's `specific reasons for giving the jury's recommendation the consideration [Judge Segrest] gave it.' 808 So.2d at 1219. Because a remand is not possible, and in order to ensure that the death penalty in this case was not imposed in an arbitrary and capricious manner, this Court must perform its own review of the propriety of the death sentence and determine whether the aggravating circumstances outweigh the mitigating circumstances."
859 So.2d at 1191-92 (footnote omitted). This Court, however, cannot accurately say, "a remand is not possible." A remand would just be a lot of trouble, in that, if the original trial judge cannot be temporarily coaxed out of retirement, a remand would require a successor trial judge to familiarize himself or herself with the case completely, as a successor civil trial judge would pursuant to Rule 63, Ala. R. Civ. P.; to conduct a new sentencing hearing; to prepare a new sentencing order; and to resentence the defendant.
Ex parte Taylor holds "that Alabama's capital-sentencing procedure does not result in the imposition of the death sentence in an arbitrary and capricious manner in violation of the Fourteenth Amendment" because our procedure requires "that the trial judge must state specific reasons for giving the jury's recommendation the consideration he gave it," 808 So.2d at 1219, as this Court found the trial judge had in fact done in that case before it ever reached this Court, 808 So.2d at 1219. Sentencing in a capital case is the duty and the prerogative of the trial court. § 13A-5-47 (a), Ala.Code 1975. Likewise, considering the recommendation of the jury is the duty and the prerogative of the trial court. § 13A-5-47(e), Ala.Code 1975. The failure of the trial court to perform these most basic statutory duties is a denial of due process. See Ex parte Taylor, 808 So.2d at 1219.
This Court is not the trial court. This Court cannot, as the main opinion does, perform the basic statutory duty of the trial court. If we were able to abandon our appellate and supervisory duties and to assume the duties of the trial court, we could not then conduct an appellate review of our own trial-court handiwork, as the main opinion must be doing, without violating the right of the defendant to appellate due process. Thus the main opinion is either condoning a denial of due process by the trial court or denying appellate due process here in this Court or is even committing both errors by undertaking to perform the duties of both courts.
Therefore, I respectfully submit that this case must be remanded for compliance with Ex parte Taylor. Moreover, on such remand, the trial court would be obliged to consider the life-without-parole recommendation by the jury as a mitigating circumstance in accordance with Ex parte Carroll, 852 So.2d 833 (Ala.2002), which does apply to the case now before us, Griffith v. Kentucky, 479 U.S. 314, 328, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987).
Because, in my opinion, Ex parte Taylor requires a remand to the trial court, I must respectfully dissent from the judgment of affirmance. I concur, however, insofar as the main opinion affirms the adjudication of the defendant's guilt.
LYONS, J., concurs.
NOTES
[1] Although Waldrop was convicted before the Supreme Court announced its decision in Ring, that Court has previously held that "a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final." Griffith v. Kentucky, 479 U.S. 314, 328, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987). "By `final,' we mean a case in which a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied." Griffith, 479 U.S. at 321 n. 6, 107 S.Ct. 708. Because Waldrop's case was pending on certiorari review when Ring was decided, the new rule announced in that case is applicable to this case. The issue whether Ring retroactively applies to cases that were final when it was decided is not before us.
[2] The United States Supreme Court upheld a similar procedure in Lowenfield v. Phelps, 484 U.S. 231, 244-45, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988)("The use of `aggravating circumstances' is ... a means of genuinely narrowing the class of death-eligible persons and thereby channeling the jury's discretion. We see no reason why this narrowing function may not be performed by jury findings at either the sentencing phase of the trial or the guilt phase."). See also Tuilaepa v. California, 512 U.S. 967, 972, 114 S.Ct. 2630, 129 L.Ed.2d 750 (1994) ("The aggravating circumstance may be contained in the definition of the crime or in a separate sentencing factor (or in both).").
[3] The jury in California v. Ramos undertook the role of the sentencer. 463 U.S. at 995 n. 2, 103 S.Ct. 3446.
[4] This Court takes judicial notice of the fact that the trial judge in Waldrop's case, Dale Segrest, is no longer serving as an Alabama circuit court judge.
[*] Justice Houston did not attend oral argument in this case held on September 10, 2002; however, on September 18, 2002, he reviewed the videotape of the oral argument.