A Jefferson County jury convicted Taurus Carroll of the capital murder of Betty Long. The murder was made capital because it occurred during the course of a robbery in the first degree, a violation of § 13A-5-40(a)(2), Ala. Code 1975. The jury, by a vote of 10-2, recommended the imposition of a sentence of life in prison without the possibility of parole, but the trial court overrode that recommendation and sentenced Carroll to death.
The Court of Criminal Appeals affirmed the conviction, but remanded for a new sentencing, holding that the trial court had improperly considered Carroll's prior youthful-offender adjudications to negate the statutory mitigating circumstance of no significant history of prior criminal activity. Carroll v. State, 852 So.2d 801 (Ala.Crim.App. 1999) ("CarrollI"). On remand, the trial court entered a new sentencing order reimposing the sentence of death. The Court of Criminal Appeals, in an "on return to remand" opinion, affirmed the sentence on November 19, 1999,852 So.2d at 818 ("Carroll II"). Carroll petitioned for certiorari review, which was automatically granted under Rule 39(c), Ala.R.App.P., as that rule then read.[1] For a detailed statement of the facts of this case, seeCarroll I.
We have carefully considered the arguments of counsel for the defense and for the State; we have also carefully reviewed the decisions of the Court of Criminal Appeals in light of those arguments.[2] We conclude that the Court of Criminal Appeals adequately addressed in Carroll I the arguments Carroll raises before this Court concerning his conviction. However, we will address the arguments Carroll raises as to why his sentence should be reversed.
Carroll argues that because he was a minor at the time he committed this offense, the imposition of the sentence of death violates the International Covenant on Civil and Political Rights, to which the United States is a signatory. We addressed a similar argument in Ex partePressley, 770 So.2d 143 (Ala. 2000), in which we concluded that the Covenant did not erect a barrier to the imposition of the death penalty on a defendant who was less than 18 years of age when he committed the offense for which he was convicted. In light of Pressley, therefore, we conclude that Carroll's argument that his sentence must be reversed because it is a violation of the Covenant must fail.
Carroll also argues that, on remand, the trial court improperly excluded him from a sentencing hearing. This claim is raised for the first time on this certiorari review; therefore, we review it under the plain-error standard of review. See Rule 39(a)(2)(D), Ala. R. App. P (as amended May 19, 2000). "`"Plain" error only arises if the error is so obvious that the failure to notice it would seriously affect the fairness or integrity of the judicial proceeding.'" Ex parte Womack, 435 So.2d 766,769 (Ala. 1983) (quoting United States v. Chaney, 662 F.2d 1148, 1152
(5th Cir. 1981)). *Page 824 
A defendant who is convicted of a capital offense is entitled to a sentencing hearing. §§ 13A-5-45 through -53, Ala. Code 1975. The sentencing hearing is to be conducted in the presence of a jury, unless both parties consent to dispense with that requirement. § 13A-5-46, Ala. Code 1975. At the conclusion of the sentencing hearing, the jury returns an advisory verdict recommending a sentence. Id. "After the sentencing hearing has been conducted, and after the jury has returned an advisory verdict, . . . the trial court shall proceed to determine the sentence." § 13A-5-47(a), Ala. Code 1975. This procedure was followed in Carroll's sentencing.
The Court of Criminal Appeals remanded the case with instructions that the trial court resentence Carroll, holding:
 "Because the trial court overrode the jury's recommended sentence of life imprisonment without parole, it will not be necessary for the trial court to conduct another sentencing-phase hearing before the jury. Nor will it be necessary for the trial court to consider additional evidence or argument from the parties."
Carroll I, 852 So.2d at 817. Thus, it is clear that no new sentencing hearing was required, and none was conducted. There was no hearing from which Carroll was excluded, nor was he due one, and therefore we find no reversible error.
Carroll also argues that the trial court erred by considering his prior youthful-offender adjudications as going to the weight to be assigned to the statutory mitigating factor of no prior criminal activity. This Court addressed this issue in Ex parte Burgess, 811 So.2d 617 (Ala. 2000) (on application for rehearing). (Although Burgess dealt with juvenile adjudications and this case deals with youthful-offender adjudications, only "convictions" can negate the statutory mitigating circumstance of "no significant history of prior criminal activity," and youthful-offender adjudications are not convictions, just as juvenile adjudications are not convictions.) In its opinion in Burgess, this Court wrote:
 "The fact that a trial court has access through the presentence report to the juvenile record of a defendant of a capital crime, but cannot consider juvenile adjudications to negate the mitigating circumstance of the lack of any significant history of prior criminal activity, appears to be a contradiction. In discussing that issue, the Court of Criminal Appeals concluded that although juvenile adjudications cannot be used to negate the mitigating circumstance, the trial court can consider them when conducting the weighing process required in capital cases. . . .
". . . .
 "We agree with the Court of Criminal Appeals' conclusion that a trial court may consider a defendant's juvenile adjudications to be a relevant consideration in deciding what weight to assign to the statutory mitigating circumstances of a defendant's lack of a significant prior criminal history and a defendant's age at the time of the offense. . . . In other words, during the sentencing process in a capital case, the trial court may use a defendant's juvenile record to diminish the weight to be accorded the mitigating circumstance of that defendant's lack of a significant history of prior criminal activity, as well as the mitigating circumstance of that defendant's age at the time he or she committed the capital offense, but the trial court may not use the juvenile record as the basis for giving little or no weight to such mitigating circumstances."
811 So.2d at 623-24. This Court then went on to hold that the trial court had improperly considered Burgess's juvenile adjudications, as demonstrated by the fact *Page 825 
that "[t]he trial court's sentencing order shows that Burgess's juvenile record was a conspicuous and dominating factor in the trial court's weighing process." 811 So.2d at 624. This Court concluded:
 "The statements contained in the trial court's painstaking written order in this very difficult case reflect that the trial court relied upon Burgess's juvenile adjudications to give nominal weight not only to the two statutory mitigating circumstances [of no prior criminal history (§ 13A-5-51(1)) and age at the time of the crime (§ 13A-5-51(7))], but also to other mitigating circumstances, including the jury's recommendation. The trial court's use of Burgess's juvenile record — use indicated by the court's numerous references to that record — to discount to inconsequentiality the numerous mitigating circumstances, in favor of the one aggravating circumstance, was an abuse of discretion."
811 So.2d at 628. (Emphasis added.)
In this case, the trial judge wrote in his sentencing order on remand:
 "The Court finds the following aggravating [circumstance] in this case:
 "1. The capital offense was committed while the defendant was engaged in, or was an accomplice in, the commission of, or an attempt to commit, or flight after committing, or attempting to commit, robbery.
". . . .
 "Upon consideration of all the evidence brought forth at the trial of this case, the sentencing hearing and the pre-sentence investigation report, the Court finds that the evidence presented in mitigation was the fact that the Jury did recommend life without parole and that at the time the offense occurred the defendant was 17 years of age. Other evidence in mitigation was the fact that the defendant's grandmother testified at the sentencing hearing on the defendant's behalf and supplied the Court with insight into the defendant's family background. The defendant's grandmother indicated that she loved her grandson and did not want him put to death.
 "In addition, the Court finds that the defendant has no significant history of prior criminal activity. The Court is aware of the fact that the defendant had just [been released from] the penitentiary on December 24, 1994, just four months before this incident, where the defendant was serving time on four youthful-offender convictions involving alleged burglaries while armed. The Court is aware that it cannot consider and has not considered these prior convictions as an aggravating circumstance herein and cannot consider these youthful-offender convictions to negate this statutory mitigating circumstance, however, this Court has considered the prior circumstances and behavior which gave rise to the youthful-offender convictions in assessing the weight to be afforded this mitigating circumstance."
(C.R. on remand at 5-6.)
In Burgess, as in this case, the court found only one aggravating circumstance, that being that the murder took place during the course of a robbery. In Burgess, the trial court explained "several aspects of this aggravating fact that the Court finds particularly disturbing," thus implicitly according great weight to the aggravating circumstance. In this case, the trial court did not elaborate upon the weight it accorded to the same aggravating circumstance.
In both cases, the trial court found to exist some of the same mitigating circumstances: (1) no significant prior criminal history; (2) age of the defendant; (3) the *Page 826 
favorable testimony of the family of the defendant; and (4) the jury's recommendation of life imprisonment without parole. These comprised all of the mitigating circumstances found by the trial judge in this case, but the trial judge in Burgess found the additional mitigating factors of (1) a history of church attendance; (2) the defendant had obtained his GED while incarcerated; (3) the defendant had been diagnosed with a conduct disorder; (4) the defendant had been "diagnosed as being hyperactive and having attention-deficit disorder"; and (5) the defendant did not act alone in the commission of the offense.
As noted in the excerpts from Burgess quoted hereinabove, we held in that case that "a trial judge may consider a defendant's juvenile adjudications to be a relevant consideration in deciding what weight to assign to the statutory mitigating circumstances of a defendant's lack of a significant prior criminal history and a defendant's age at the time of the offense." 811 So.2d at 624. We went on to caution, however, that although a trial judge properly could use a defendant's juvenile record "to diminish the weight to be accorded" those two mitigating circumstances, "the trial court may not use the juvenile record as the basis for giving little or no weight to such mitigating circumstances." The violation of those principles we found to be present in Burgess was that the trial judge's sentencing order showed that Burgess's juvenile record "was a conspicuous and dominating factor in the trial court's weighing process," 811 So.2d at 623, and that the trial judge used the juvenile record "to discount to inconsequentiality the numerous mitigating circumstances, in favor of the one aggravating circumstance."811 So.2d at 628.
As already noted, the trial judge in this case expressly found that Carroll "[had] no significant history of prior criminal activity" and expressly acknowledged that he could not consider, "to negate this statutory mitigating circumstance," the fact that, just four months before the robbery-murder, Carroll had been released from the penitentiary, "where [he] was serving time on four youthful-offender convictions involving alleged burglaries while armed." Nonetheless, the trial judge further acknowledged that he had "considered the prior circumstances and behavior which gave rise to the youthful-offender convictions in assessing the weight to be accorded this mitigating circumstance."
Unlike Burgess, nothing in the record in the present case indicates that the trial judge, in considering Carroll's four youthful-offender convictions, allowed them to "negate" the statutory mitigating circumstance of no significant history of prior criminal activity, or used them in such a way as "to discount to inconsequentiality the . . . mitigating circumstances" and "as the basis for giving little or no weight to such mitigating circumstances."
Accordingly, we find this case distinguishable from Burgess because there is no indication that the trial judge improperly used Carroll's youthful-offender record to negate the mitigating circumstance of no significant history of prior criminal activity, or to diminish or devalue it so as to allow it little or no weight and discount it to inconsequentiality.
Carroll also argues that the trial court should be bound by the recommendation of the jury to impose the sentence of life imprisonment without the possibility of parole. In arguing that the trial court should be bound by the jury's recommendation, Carroll "concedes that this argument is not current law, and the current law is to the contrary." (Brief of petitioner at 26.) Indeed, the Legislature has provided that the jury's sentence recommendation is advisory only and that the *Page 827 
trial court bears the responsibility of determining the appropriate sentence to impose. § 13A-5-47(a), Ala. Code 1975. The Court of Criminal Appeals and this Court have affirmed the constitutionality of the Legislature's sentencing scheme. See Hooks v. State, 534 So.2d 329
(Ala.Crim.App. 1987), aff'd, 534 So.2d 371 (Ala. 1988), cert. denied,488 U.S. 1050 (1989). Further, the United States Supreme Court has reviewed Alabama's sentencing scheme and in its review it did not find the scheme to violate the prohibition against cruel and unusual punishment contained in the Eighth Amendment to the United States Constitution. See Harris v. Alabama, 513 U.S. 504 (1995).
This Court has recently addressed this issue in Ex parte Taylor,808 So.2d 1215 (Ala. 2001). In that case, we held:
 "In Harris, the Supreme Court reasoned that `the hallmark of the analysis is not the particular weight a State chooses to place upon the jury's advice, but whether the scheme adequately channels the sentencer's discretion so as to prevent arbitrary results,' 513 U.S. at 504, and that the `disparate treatment of jury verdicts simply reflects the fact that, in the subjective weighing process, the emphasis given to each decisional criterion must of necessity vary in order to account for the particular circumstances of each case.' Id. at 515. Thus, the question is whether Alabama's capital-sentencing procedure `adequately channels the [trial judge's] discretion so as to prevent arbitrary results.' 513 U.S. at 504. We conclude that it does."
808 So.2d at 1218. Proceeding further, however, this Court also held inTaylor:
 "Under Alabama's capital-sentencing procedure, the trial judge must make specific written findings regarding the existence or nonexistence of each aggravating circumstance and each mitigating circumstance offered by the parties. § 13A-5-47(d), Ala. Code 1975. In making these findings, the trial judge must consider a jury's recommendation of life imprisonment without parole. See § 13A-5-47(e), Ala. Code 1975 (`in [weighing the aggravating and mitigating circumstances] the trial court shall consider the recommendation of the jury contained in its advisory verdict'). Construing subsection (e) together with subsection (d), we conclude that the trial judge must state specific reasons for giving the jury's recommendation the consideration he gave it. McCausland v. Tide-Mayflower Moving Storage, 499 So.2d 1378, 1382 (Ala. 1986) (stating that subsections of a statute `should be construed together to ascertain the meaning and intent of each')."
808 So.2d at 1219. (Footnote omitted.) (Emphasis added.)
In this case, the trial judge stated both in his original sentencing order and in his sentencing order on remand:
 "Upon considering and weighing the aggravating [circumstance] against the mitigating circumstances, the Court finds that the aggravating [circumstance] outweigh[s] any mitigating circumstances. In making this determination the Court has considered the jury recommendation of life without parole. The Court finds that the aggravating [circumstance] outweigh[s] any mitigating circumstances when the jury recommendation of life without parole is taken into consideration."
(C.R. at 247-48; C.R. on remand at 6-7.) This order does not satisfy theTaylor requirement, announced after the trial *Page 828 
judge had entered his order on remand, that "the trial judge must state specific reasons for giving the jury's recommendation the consideration he gave it." 808 So.2d at 1219. (In Taylor, we concluded that the trial court had properly given reasons by stating that "some jurors' outburst of emotion after they found the defendant guilty of capital murder indicated that they were overwhelmed by their impending duty to consider the death penalty as required by law." 808 So.2d at 1219.) Accordingly, we remand this case with instructions for the Court of Criminal Appeals to remand it so that the trial judge may have an opportunity to expand his sentencing order to the extent necessary to state specific reasons for giving the jury's recommendation the consideration he gave it.
We find no reversible error in regard to Carroll's conviction; however, we conclude that this case must be remanded pursuant to Taylor
for the trial judge to have the opportunity to amend his sentencing order so as to satisfy the Taylor requirement. He shall submit his order on remand, including all necessary findings and conclusions, to the Court of Criminal Appeals within 90 days of the release of this opinion. The judgment of the Court of Criminal Appeals is affirmed as to the other issues presented by Carroll.
AFFIRMED AS TO THE CONVICTION; REMANDED WITH INSTRUCTIONS AS TO SENTENCING.*
Moore, C.J., and See, Lyons, Brown, Woodall, and Stuart, JJ., concur.
Houston, J., concurs in part and dissents in part.
Johnstone, J., concurs in part, concurs in the result in part, and dissents in part.
[1] Effective May 19, 2000, Rule 39 was amended to eliminate automatic review by this Court in death-penalty cases.
[2] The Chief Justice and three Associate Justices were not members of this Court on June 28, 2000, when it heard oral argument in this case. However, each of those Justices has now reviewed the tape of the oral argument.
* Note from the reporter of decisions: The Court of Criminal Appeals entered no order remanding this case to the circuit court. It treated the Supreme Court's remand order as remanding the case directly to the circuit court. However, the return to remand from the trial court was filed with the Court of Criminal Appeals. See its opinion at 852 So.2d 830.