852 So.2d 833 (2002)
Ex parte Taurus CARROLL.
(In re Taurus Carroll v. State of Alabama).
1010546.
Supreme Court of Alabama.
July 26, 2002.
As Modified on Denial of Rehearing September 20, 2002.
*834 Joe W. Morgan III, Birmingham, for petitioner.
William H. Pryor, Jr., atty. gen., and A. Vernon Barnett IV, asst. atty. gen., for respondent.
LYONS, Justice.
Taurus Carroll was convicted in December 1997 of intentional murder made capital because the murder occurred during the course of a robbery in the first degree. See § 13A-5-40(a)(2), Ala.Code 1975. Carroll and Mack Dailey robbed a dry-cleaning and coin-operated-laundry business in Birmingham on April 9, 1995. During the robbery, Betty Long, one of the owners of the business, was shot and later died as a result of the gunshot wound. Carroll was 17 years old at the time of the robbery murder. The jury, by a vote of 10-2, recommended that Carroll be sentenced to life imprisonment without the possibility of parole, but the trial court overrode the jury's recommendation and sentenced Carroll to death.
The Court of Criminal Appeals affirmed Carroll's conviction, but remanded the case for the trial court to resentence Carroll because in sentencing Carroll the trial court had improperly considered Carroll's prior youthful-offender adjudications. Carroll v. State, 852 So.2d 801 (Ala.Crim. App.1999) ("Carroll I"). On remand, the trial court again sentenced Carroll to death. The Court of Criminal Appeals affirmed that sentence. Carroll v. State, 852 So.2d at 818 (Ala.Crim.App.1999) ("Carroll II"). This Court granted certiorari review, and we affirmed the Court of Criminal Appeals' judgment as to Carroll's conviction, but reversed its judgment as to Carroll's sentence. Ex parte Carroll, 852 So.2d 821 (Ala.2001) ("Carroll III"). We remanded the case to allow the trial court the opportunity to "state specific reasons for giving the jury's recommendation the consideration he gave it," 852 So.2d at 828, pursuant to the requirement this Court announced in Ex parte Taylor, 808 So.2d 1215, 1219 (Ala.2001). In its order on return to remand in August 2001, the trial court submitted an amended sentencing order; in that order it weighed the aggravating circumstance and the mitigating circumstances in this case, and again overrode the jury's recommendation and sentenced *835 Carroll to death. The Court of Criminal Appeals affirmed that sentence, concluding that the trial court's reasons for overriding the jury's recommendation were sufficient to comply with Ex parte Taylor. Carroll v. State, 852 So.2d 830 (Ala.Crim.App.2001) ("Carroll IV"). This Court granted certiorari review; thus, the case is now before us for the second time. For a detailed account of the facts of this case and its procedural history, see Carroll I and Carroll III.
In its sentencing order on the first remand, the trial court found only one aggravating circumstance in this case, that the murder took place during a robbery. The court found the following four mitigating circumstances: "(1) no significant prior criminal history; (2) [the] age of the defendant; (3) the favorable testimony of the family of the defendant; and (4) the jury's recommendation of life imprisonment without parole." Carroll III, 852 So.2d at 825-26. Commenting on the Court of Criminal Appeals' remand of the case in Carroll I on the basis that the trial court had improperly considered Carroll's youthful-offender adjudications, we stated:
"[T]he trial judge in this case expressly found that Carroll `[had] no significant history of prior criminal activity' and expressly acknowledged that he could not consider, `to negate this statutory mitigating circumstance,' the fact that, just four months before the robbery murder, Carroll had been released from the penitentiary, `where [he] was serving time on four youthful-offender convictions involving alleged burglaries while armed.'"
Carroll III, 852 So.2d at 826 (quoting the trial court's order). In that opinion, we concluded that nothing in the record indicated that the trial court had allowed Carroll's adjudications as a youthful offender to negate the statutory mitigating circumstance of no significant history of prior criminal activity. We remanded the case only to allow the trial court to have an opportunity to expand the sentencing order to specifically explain the consideration it gave the jury's recommendation in compliance with Ex parte Taylor.
In its revised sentencing order on the second remand, the trial court explained its override of the jury's recommendation of a sentence of life imprisonment without the possibility of parole as follows:
"`The jury did not have before [it] the presentence report, background information and history of the defendant, his family, education and work history. The jury was not aware of the fact that the defendant had served a period of incarceration and had just been released for a very short time when he obtained a weapon and committed this intentional murder during a robbery. The jury did not view and was not privy to the expression of the pain of the victim's family expressed at the sentencing hearing before the Court.
"`Although this Court always gives, and did in this case give, great weight and consideration to a jury's recommendation as to punishment, considering the above, the Court found it appropriate to overrule the jury's recommendation of life without parole.'"
Carroll IV, 852 So.2d at 832 (quoting the trial court's order). We find two aspects of the trial court's order troubling.
First, it is clear from the foregoing excerpt from the trial court's order that the trial court considered Carroll's incarceration for youthful-offender adjudications in negating the mitigating circumstance of no significant criminal history. We specifically stated in Ex parte Burgess, *836 811 So.2d 617 (Ala.2000), that a trial court is not allowed to do so.
"[A] trial court may consider a defendant's juvenile adjudications to be a relevant consideration in deciding what weight to assign to the statutory mitigating circumstances of a defendant's lack of a significant prior criminal history and a defendant's age at the time of the offense.... In other words, during the sentencing process in a capital case, the trial court may use a defendant's juvenile record to diminish the weight to be accorded the mitigating circumstance of that defendant's lack of a significant history of prior criminal activity, as well as the mitigating circumstance of that defendant's age at the time he or she committed the capital offense, but the trial court may not use the juvenile record as the basis for giving little or no weight to such mitigating circumstances."
811 So.2d at 624 (emphasis added). Because Carroll's incarceration shortly before the murder in this case was the result of youthful-offender adjudications, the trial court's second order on remand, justifying its use of Carroll's juvenile record as the basis for giving little or no weight to the mitigating circumstance that Carroll had no significant history of prior criminal activity, conflicts with our observation in Carroll III and with our direction in Ex parte Burgess.
Second, in light of the wish of the victim's family that Carroll be sentenced to life imprisonment without parole rather than sentenced to death, evidence that was admitted without objection, we find it hard to reconcile the trial court's reliance upon the "pain of the victim's family" as one of its reasons for overriding the jury's recommendation.
Although the trial court stated that it "always gives, and did in this case give, great weight and consideration to a jury's recommendation as to punishment," under the circumstances here presented, where other aspects of the trial court's order on remand are problematic, it appears that it gave insufficient weight to the jury's recommendation that Carroll be sentenced to life imprisonment without parole. In this case, the recommendation was entitled to considerable weight.
We take this opportunity to further explain the effect of a jury's recommendation of life imprisonment without the possibility of parole.[1] Such a recommendation is to be treated as a mitigating circumstance. The weight to be given that mitigating circumstance should depend upon the number of jurors recommending a sentence of life imprisonment without parole, and also upon the strength of the factual basis for such a recommendation in the form of information known to the jury, such as conflicting evidence concerning the identity of the "triggerman" or a recommendation of leniency by the victim's family; the jury's recommendation may be overridden based upon information known only to the trial court and not to the jury, when such information can properly be used to undermine a mitigating circumstance.
*837 Based on an appellate court's duty to independently weigh the aggravating and mitigating circumstances in a capital case, and treating the jury's recommendation as a mitigating circumstance in this case, we conclude that the trial court's override in this case of the jury's recommended sentence of life imprisonment without parole and that court's subsequent sentence of death were improper under the circumstances presented here. See § 13A-5-53(a) and (b), Ala.Code 1975. Here we have overwhelming support of a sentence of life imprisonment without the possibility of parole, as evidenced by the jury's vote of 10-2 for such a sentence. Furthermore, Justice Houston in a special writing in Carroll III ably marshaled all of the factors that make the sentence of death in this case excessive and disproportionate.
"Given the jury's recommendation of life imprisonment without parole; the recommendation of the victim's family that the defendant be sentenced to life imprisonment without parole; the fact that the defendant was 17 years old when he committed the crime; and the circumstances of the crime (particularly that the defendant made no attempt to kill the witnesses to the crime), ... the sentence of death is excessive and disproportionate."
852 So.2d at 828 (Houston, J., concurring in part and dissenting in part). Because of Carroll's age at the time of the offense, his lack of a significant criminal history, and the recommendation of the victim's family that he be sentenced to life imprisonment without parole, the jury's 10-2 recommendation that he not be sentenced to death tips the scales in favor of following the jury's recommendation. We therefore reverse the judgment of the Court of Criminal Appeals as to Carroll's sentence and remand the case for that court to instruct the trial court to resentence Carroll following the jury's recommendation of life imprisonment without the possibility of parole.
REVERSED AND REMANDED WITH DIRECTIONS.
HOUSTON, JOHNSTONE, HARWOOD, and WOODALL, JJ., concur.
MOORE, C.J., and BROWN and STUART, JJ., concur in the result.
MOORE, Chief Justice (concurring in the result).
In light of the United States Supreme Court's recent decision in Ring v. Arizona, 536 U.S. 2428, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), I concur in the result.
NOTES
[1] This Court decided to reverse the death sentence in this case before the United States Supreme Court released its opinion in Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), on June 24, 2002. Because we are remanding this case for the imposition of a sentence of life imprisonment without the possibility of parole, issues as to the continuing validity of the conclusions here stated regarding the effect of a jury's recommendation of life imprisonment without the possibility of parole and the authority of the trial court to override such a sentence and the scope of the appellate court's review must await another day.