909 So.2d 283 (2003)
Ex parte Phillip Wayne TOMLIN.
(In re Phillip Wayne Tomlin
v.
State of Alabama).
1020375.
Supreme Court of Alabama.
October 3, 2003.
Rehearing Denied December 19, 2003.
*284 Bernard E. Harcourt, New York, New York, for petitioner.
William H. Pryor, Jr., atty. gen., Nathan A. Forrester, deputy atty. gen., and Stephen Shows and James R. Houts, asst. attys. gen., for respondent.
WOODALL, Justice.
On January 2, 1977, the bodies of Richard Brune and Cheryl Moore were found on an exit ramp from I-10 in Mobile County. Both had died as the result of multiple gunshot wounds. In 1999, Phillip Wayne Tomlin was convicted, for the fourth time, of the intentional murders of Brune and Moore, an offense made capital because *285 two people were intentionally killed pursuant to one act or a series of acts. See § 13-11-2(a)(10), Ala.Code 1975 (repealed).
The jury at Tomlin's fourth trial was not asked to make a sentencing recommendation. Instead, the parties stipulated that the jury at Tomlin's third trial, by a vote of 12-0, had recommended that Tomlin be sentenced to life imprisonment without the possibility of parole. After a sentencing hearing, the trial court overrode the jury's recommendation and sentenced Tomlin to death.
The Court of Criminal Appeals affirmed Tomlin's conviction and sentence. Tomlin v. State, 909 So.2d 213 (Ala.Crim.App.2002).[1] Tomlin petitioned this Court for certiorari review, which was granted by an order limiting "[t]he scope of review . . . to sentencing/penalty-phase issues." The dispositive issue is whether the decision of the Court of Criminal Appeals conflicts with this Court's decision in Ex parte Carroll, 852 So.2d 833 (Ala.2002).
In Carroll, this Court stated:
"We take this opportunity to further explain the effect of a jury's recommendation of life imprisonment without the possibility of parole. Such a recommendation is to be treated as a mitigating circumstance. The weight to be given that mitigating circumstance should depend upon the number of jurors recommending a sentence of life imprisonment without parole, and also upon the strength of the factual basis for such a recommendation in the form of information known to the jury, such as conflicting evidence concerning the identity of the `triggerman' or a recommendation of leniency by the victim's family; the jury's recommendation may be overridden based upon information known only to the trial court and not to the jury, when such information can properly be used to undermine a mitigating circumstance."
852 So.2d at 836 (footnote omitted). The State urges us to overrule Carroll, "at least insofar as it declared that a recommendation of life by the jury `is to be treated as a mitigating circumstance.'" State's brief, at 36. We decline to do so.
Unlike the defendant in Carroll, Tomlin was convicted and sentenced under the 1975 death-penalty statute, not the current death-penalty statute. However, the State has expressed its willingness to assume that the principles enunciated in Carroll are applicable to a case tried under the 1975 statute, and, indeed, the State makes no argument to the contrary. See State's brief, at 32. Therefore, we will apply those principles to the facts of this case.
In its sentencing order, the trial court found only one aggravating circumstance: "The only aggravating circumstance. . . in this case is the one contained in the definition of the capital offense itself: that [Tomlin] committed murder in the first degree wherein two human beings were intentionally killed by the defendant by a series of acts." While the trial court found no statutory mitigating circumstances, it found several nonstatutory mitigating circumstances:
"As to non-statutory mitigating circumstances, the Court finds that the defendant has been a model prisoner since incarcerated and has attempted to improve himself spiritually and educationally. The Court further finds that *286 the defendant has no significant history of violent behavior nor an apparent reputation for such. (The pre-sentence investigation report of October 26, 1978 does reflect one incident.) The Court further finds that the defendant has been a source of parental support for his children."
The trial court then explained its weighing of the aggravating circumstances and the mitigating circumstances and proceeded to override the jury's recommendation, stating:
"The Court has carefully, and at length, reviewed the aggravating circumstances and the statutory and non-statutory mitigating circumstances and has given serious consideration to the unanimous recommendation of the jury for life [imprisonment] without parole and the evidence received by the jury at the hearing.
"The other perpetrator in this crime, John Ronald Daniels, was convicted of the capital offense of first degree murder of the same two people and [was] sentenced to death. This Court is charged with the duty to insure that the death penalty is not imposed in a freakish, arbitrary, wanton or capricious manner. That is the reason this Court has the authority to reject a jury's recommendation of death and impose life [imprisonment] without parole and conversely the authority to reject a jury's recommendation of life without parole and impose death, if by doing either the Court prevents such prohibited imposition.
"In light of the peculiar circumstances in this case with regard to this defendant, this Court is of the opinion that the acceptance of the jury's recommendation would be wrong.
"For our judicial system to say, under the circumstances of this case, that the hit man should be sentenced to death but that the hirer, the planner, the cold avenger and the co-executioner should be sentenced to life [imprisonment] without parole is an aberration; a freak that cannot be allowed.
"In view of the foregoing, this Court, even though the Court finds and considers only one aggravating circumstance under its interpretations of Ex parte Hays, 518 So.2d 768 (Ala.1986), cert. denied, Hayes v. Alabama, [485 U.S. 929,] 108 S.Ct. 1099 [(1988)], overrides the jury recommendation and sentences [Tomlin] to death."
We conclude that, under the circumstances presented here, the trial court's override of the jury's recommended sentence of life imprisonment without parole and that court's subsequent sentence of death were improper.
"[T]he death penalty should be carried out only after this Court has found it appropriate to do so by independently weighing the aggravating and mitigating circumstances." Ex parte Hays, 518 So.2d 768, 780 (Ala.1986)(opinion on rehearing). Therefore, while the trial court, acting without the guidance offered by Carroll, gave "serious consideration to the unanimous recommendation of the jury for life [imprisonment] without parole," we are compelled to treat the jury's recommendation as a mitigating circumstance. Indeed, we must give that mitigating circumstance great weight.
"The weight to be given [a jury's recommendation of life imprisonment without the possibility of parole] should depend upon the number of jurors recommending a sentence of life imprisonment without parole." Carroll, 852 So.2d at 836. In Carroll, we found that a jury's 10-2 vote for a sentence of life imprisonment without the possibility of parole demonstrated *287 "overwhelming support" of such a sentence. 852 So.2d at 837. Therefore, it is only logical to conclude that a unanimous recommendation like the one here provides even more "overwhelming support" of such a sentence and, therefore, must be afforded great weight.
"The weight to be given [a jury's recommendation of life imprisonment without the possibility of parole] should depend. . . also upon the strength of the factual basis for such a recommendation in the form of information known to the jury." Carroll, 852 So.2d at 836. Here, the State does not question "the strength of the factual basis for [the jury's] recommendation." Indeed, the State argues only that "the [trial] court considered factual information known to the jury in finding the existence of one aggravating factor  first degree murder wherein two persons were killed." State's brief, at 34-35. Thus, we must conclude that the jury's recommendation rested upon an adequate factual basis.
"[T]he jury's recommendation [of life imprisonment without the possibility of parole] may be overridden based upon information known only to the trial court and not to the jury, when such information can properly be used to undermine a mitigating circumstance." Carroll, 852 So.2d at 836. Here, the trial court overrode the jury's recommendation, because "[t]he other perpetrator in this crime, John Ronald Daniels, was convicted of the capital offense of first degree murder of the same two people and [was] sentenced to death."[2] Although the jury was not aware of Daniels's sentence, his sentence cannot properly be used to undermine a mitigating circumstance.
As noted in the State's brief, "Tomlin. . . argues . . . that the trial court erred in considering his co-defendant's sentence because it is not an aspect of Tomlin's character or of the crime." State's brief, at 37. The State admits that "Tomlin's reasoning is correct to the extent that he argues that his co-defendant's sentence should not be treated as a mitigating or aggravating circumstance. It is not an aspect of [Tomlin's] character or of the crime." State's brief, at 37-38. It would be inconsistent with the State's admission for this Court to hold that Daniels's sentence could properly be used to undermine the jury's recommendation of life imprisonment without the possibility of parole. See Coulter v. State, 438 So.2d 336, 345 (Ala.Crim.App.1982), aff'd, 438 So.2d 352 (Ala.1983)("In the sentencing phase of the trial, the fact that an alleged accomplice did not receive the death penalty is no more relevant as a mitigating factor for the defendant than the fact that an alleged accomplice did receive the death penalty would be as an aggravating circumstance against him.")(emphasis added).
For the foregoing reasons, we reverse the judgment of the Court of Criminal Appeals as to Tomlin's sentence and remand the case for that court to instruct the trial court to resentence Tomlin, following the jury's recommendation of life imprisonment without the possibility of parole.
REVERSED AND REMANDED WITH DIRECTIONS.
LYONS and HARWOOD, JJ., concur.
HOUSTON and JOHNSTONE, JJ., concur specially.
SEE, BROWN, and STUART, JJ., concur in the result.
*288 HOUSTON, Justice (concurring specially).
I agree with the State's argument that in sentencing Tomlin to death the trial court did not violate Ala.Code 1975, § 13-11-6 (repealed), in finding the existence of an aggravating circumstance  that two persons were killed by one course of conduct  that was not enumerated in that Code section (Ex parte Kyzer, 399 So.2d 330 (Ala.1981)), because the capital offense in this case made Tomlin eligible for the death penalty. However, in the jury's unanimous recommendation "mercy seasons justice."[3]
JOHNSTONE, Justice (concurring specially).
I concur in the main opinion. I add that the nullification of this death sentence is necessary for another, independent reason.
The only aggravating circumstance claimed by the State and purportedly invoked by the trial court was not authorized by the applicable statutory provisions. This defect is jurisdictional.
On or about January 2, 1977 two victims were shot to death. Tomlin was indicted in 1978 for double murder under the then-existing § 13-11-2(a)(10), Ala.Code 1975, which provided that one of the categories of capital murder was "[m]urder in the first degree wherein two or more human beings are intentionally killed by the defendant by one or a series of acts."
In 1999 Tomlin was tried (for the fourth time after three prior trials, convictions, death sentences, and reversals), convicted, and sentenced to death when the trial judge overrode the unanimous life recommendation by the jury. In sentencing Tomlin to death, the trial court expressly wrote:
"`The only aggravating circumstance the Court finds to exist in this case is the one contained in the definition of the capital offense itself: that the defendant, Phillip Wayne Tomlin, committed murder in the first degree wherein two human beings were intentionally killed by the defendant by a series of acts.'"
Tomlin v. State, 909 So.2d 213, 278 (Ala.Crim.App.2002). At the time of this double murder, 1977, the statutory aggravating circumstances were specified by the then-existing § 13-11-6, Ala.Code 1975, which did not include any such aggravating circumstance as that found by the trial court. Tomlin v. State, supra, at 278-79 (quoting the Code section).
Not until 1999, the year Tomlin was last tried, did the Legislature add the statutory aggravating circumstance that "[t]he defendant intentionally caused the death of two or more persons by one act or pursuant to one scheme or course of conduct," § 13A-5-49(9), Ala.Code 1975. The constitutional prohibitions against applying ex post facto laws against criminal defendants foreclose the application of this new § 13A-5-49(9) aggravating circumstance against Tomlin. Art. I § 10, cl. 1, U.S. Const.; Article I, § 7 and § 10, Ala. Const. 1901; Walker v. State, 433 So.2d 469, 470 (Ala.1983); Taylor v. City of Decatur, 465 So.2d 479 (Ala.Crim.App.1984); and Lynce v. Mathis, 519 U.S. 433, 117 S.Ct. 891, 137 L.Ed.2d 63 (1997).
Tomlin argued to the Court of Criminal Appeals that his death sentence was illegal for the absence of any aggravating circumstance. That court, however, cites Beck v. State, 396 So.2d 645, 663 (Ala.1980), for the proposition that double murder was an aggravating circumstance in 1977. Tomlin v. State, supra, at 279. The Court of *289 Criminal Appeals quotes this language from Beck:
"In Alabama, the aggravating circumstances constitute an element of the capital offense and are required to be `averred in the indictment' (Code 1975, § 13-11-2), and must be proved beyond a reasonable doubt. Consequently, the jury verdict that the defendant was guilty of committing the capital offense would mean that the State had already established at least one aggravating circumstance, even though the legislature did not include an aggravating circumstance in § 13-11-6 to correspond with the `aggravation' made a part of each capital offense by § 13-11-2(a)."
Beck, 396 So.2d at 663. Beck, however, is distinguishable from the case now before us in that Beck was charged with murder during the commission of a robbery:
"`Gilbert Franklin Beck . . . feloniously took . . . $73.00, the property of Roy Malone, from his person or in his presence, and against his will, by violence to his person, or by putting him in such fear as unwillingly to part with the same, and during the course of said robbery the said defendant did unlawfully and intentionally, and with malice aforethought, kill Roy Malone, the victim of said robbery, by cutting the said Roy Malone with a knife.'"
Beck v. State, 365 So.2d 985, 987 (Ala.Crim.App.1978). The during-the-course-of-a-robbery element was an aggravating circumstance specified in the then-existing § 13-11-6, while double murder or multiple murder, as in Tomlin's case now before us, was not specified as such an aggravating circumstance.
Section 13-11-4, Ala.Code 1975, as it then existed, provided:
"Notwithstanding the fixing of the punishment at death by the jury, the court, after weighing the aggravating and mitigating circumstances, may refuse to accept the death penalty as fixed by the jury and sentence the defendant to life imprisonment without parole, which shall be served without parole; or the court, after weighing the aggravating and mitigating circumstances, and the fixing of the punishment at death by the jury, may accordingly sentence the defendant to death. If the court imposes a sentence of death, it shall set forth in writing, as the basis for the sentence of death, findings of fact from the trial and the sentence hearing, which shall at least include the following:

"(1) One or more of the aggravating circumstances enumerated in section 13-11-6, which it finds exists in the case and which it finds sufficient to support the sentence of death;
"(2). . . ."
(Emphasis added.) Therefore, at least one of the aggravating circumstances specified in § 13-11-6 was prerequisite to a death sentence. Beck does not purport to eliminate the requirements of § 13-11-4.
Thus, this death sentence is illegal for the absence of an "aggravating circumstance[] enumerated in section § 13-11-6." "When the court imposes sentence in excess of that authorized by statute, it exceeds its jurisdiction, and the sentence is consequently void." Ferguson v. State, 565 So.2d 1172, 1173 (Ala.Crim.App.1990) (citing Ex parte McKivett, 55 Ala. 236 (1876); City of Birmingham v. Perry, 41 Ala.App. 173, 125 So.2d 279 (1960); and Ex parte Brannon, 547 So.2d 68 (Ala.1989)).
Tomlin does not seek certiorari review on this particular issue. We may, however, recognize plain error, Rule 39(a)(2)(D), Ala. R.App. P., as this error is; and we must recognize the lack of jurisdiction to impose a sentence. "`Matters concerning unauthorized sentences are jurisdictional,' *290 Hunt v. State, 659 So.2d 998, 999 (Ala.Crim.App.1994); therefore, we may take notice of an illegal sentence even though [the defendant] did not raise the issue in the trial court or in his brief on appeal." Bowles v. State, 784 So.2d 1077, 1080 (Ala.Crim.App.2000).
NOTES
[1] The Court of Criminal Appeals' opinion provides a detailed account of the facts of this case and its procedural history.
[2] "The record reflects that Daniels died of natural causes in 1995 while he was incarcerated in Holman Penitentiary on Alabama's death row." Tomlin v. State, 909 So.2d at 281 n. 2.
[3] William Shakespeare, The Merchant of Venice, act IV, sc. i.