931 So.2d 774 (2005)
George MARTIN
v.
STATE of Alabama.
CR-99-2249.
Court of Criminal Appeals of Alabama.
April 29, 2005.
Opinion on Return to Remand November 23, 2005.
*775 Vader Al Pennington, Mobile, for appellant.
William H. Pryor, Jr., and Troy King, attys. gen., and David R. Clark, asst. atty. gen., for appellee.

On Remand from the Alabama Supreme Court
WISE, Judge.
George Martin was convicted of murder made capital because it was committed for *776 pecuniary gain. See § 13A-5-40(a)(7), Ala.Code 1975. The jury, by a vote of 8-4, recommended that Martin be sentenced to life imprisonment without the possibility of parole. The trial court, however, overrode the jury's recommendation and sentenced Martin to death.
On May 30, 2003, this Court affirmed Martin's conviction and sentence. Martin v. State, 931 So.2d 736 (Ala.Crim.App. 2003). Martin petitioned the Alabama Supreme Court for certiorari review. That court granted the petition. On December 10, 2004, the Supreme Court affirmed Martin's conviction, but reversed the sentence of death, and remanded the case to this Court, holding that the trial court's written sentencing order failed "to allow the defendant the benefit of having the jury's recommendation of life imprisonment without parole treated as a mitigating factor as required by Ex parte Carroll[, 852 So.2d 833 (Ala.2002)]." Ex parte Martin, 931 So.2d 759, 771 (Ala.2004) (footnote omitted). The court noted:
"As we held in Carroll, the weight to be given the jury's recommendation of life imprisonment without parole as a mitigating circumstance should depend upon the number of jurors recommending that sentence and also upon the strength of the factual basis for such a recommendation in the form of information known to the jury, such as the conflicting evidence concerning Martin's alleged confession to his fellow inmate and the probable cross-contamination of Martin's clothing. As we noted in Carroll, `the jury's recommendation may be overridden based upon information known only to the trial court and not to the jury, when such information can properly be used to undermine a mitigating circumstance.' 852 So.2d at 836."
931 So.2d at 771.
In accordance with the Supreme Court's opinion in Ex parte Martin, the trial court's sentence of death is reversed, and this case is remanded for the trial court's entry of a new sentencing order that takes into consideration the Supreme Court's decision in Ex parte Carroll. The circuit court shall take all necessary action to see that the circuit court makes due return to this Court at the earliest possible time and within 90 days of the release of this opinion.
REVERSED IN PART AND REMANDED WITH DIRECTIONS.
McMILLAN, P.J., and COBB, BASCHAB, and SHAW, JJ., concur.

On Return to Remand
WISE, Judge.
George Martin was convicted of murder made capital because it was committed for pecuniary gain. See § 13A-5-40(a)(7), Ala.Code 1975. Although the jury, by a vote of 8-4, recommended that Martin be sentenced to life imprisonment without the possibility of parole, the trial court overrode the jury's recommendation and sentenced Martin to death.
On May 30, 2003, this Court affirmed Martin's conviction and sentence. Martin v. State, 931 So.2d 736 (Ala.Crim.App. 2003). Martin petitioned the Alabama Supreme Court for certiorari review, which that court granted. On December 10, 2004, the Supreme Court affirmed Martin's conviction, but reversed the sentence of death and remanded the case to this Court, holding that the trial court's written sentencing order failed "to allow the defendant the benefit of having the jury's recommendation of life imprisonment without parole treated as a mitigating factor as *777 required by Ex parte Carroll [, 852 So.2d 833 (Ala.2002)]." Ex parte Martin, 931 So.2d 759, 771 (Ala.2004) (footnote omitted). The Supreme Court noted:
"As we held in Carroll, the weight to be given the jury's recommendation of life imprisonment without parole as a mitigating circumstance should depend upon the number of jurors recommending that sentence and also upon the strength of the factual basis for such a recommendation in the form of information known to the jury, such as the conflicting evidence concerning Martin's alleged confession to his fellow inmate and the probable cross-contamination of Martin's clothing. As we noted in Carroll, `the jury's recommendation may be overridden based upon information known only to the trial court and not to the jury, when such information can properly be used to undermine a mitigating circumstance.' 852 So.2d at 836."
931 So.2d at 771.
In accordance with the Supreme Court's opinion in Ex parte Martin, this Court reversed the trial court's sentence of death and remanded Martin's case for the trial court to enter a new sentencing order.
The trial court has complied with our instructions and on return to remand has submitted a detailed sentencing order in which it weighed the aggravating circumstances and the mitigating circumstances, giving the jury's recommendation that Martin be sentenced to life imprisonment without parole consideration as a mitigating circumstance. The court's order first addressed the factors that the Supreme Court considered in Ex parte Carroll, including the jury's 10-2 recommendation of life imprisonment without the possibility of parole, which the Court stated "tips the scales in favor of following the jury's recommendation." 852 So.2d 833, 837 (Ala. 2002). (C. 22-26.) The court concluded that the facts in Martin's case were clearly distinguishable from those in Ex parte Carroll, and that none of those factors allowed the jury's recommendation to "tip[ ] the scales in favor of following the jury's recommendation."
The trial court then turned to additional considerations that the Supreme Court suggested could have affected "the strength of the factual basis" for the jury's recommendation that Martin be sentenced to life imprisonment without parole: (1) "the conflicting evidence concerning Martin's alleged confession to his fellow inmate," and (2) "the probable cross-contamination of Martin's clothing." Ex parte Martin, 931 So.2d at 771. Addressing these additional considerations, the trial court's order states, in pertinent part:
"This Court, having presided over and, therefore, being in the best position to observe Martin's entire trial, including the demeanor of attorneys, witnesses, and jurors, is of the opinion that neither of the two issues listed by the Alabama Supreme Court was a determining factor in convincing 8 of 12 jurors to recommend a sentence of life [imprisonment] without parole.
"As far as the `conflicting evidence concerning Martin's alleged confession to his fellow inmate,' this Court does not believe that this had an effect on the jury in making its sentencing recommendation. [C.D.] was serving time in the Mobile County Jail for not paying parking ticket fines during the time that Martin was there awaiting trial for the murder of his wife, Hammoleketh. When another prisoner threatened to kill [C.D.], he was moved into the high security part of the Jail. It was there that Martin, and others charged with violent felonies including capital murder, *778 were being housed awaiting trial. During that time, Martin confessed to [C.D.] that he choked his wife and then drove off with her.
"To the extent that the Alabama Supreme Court suggests that there was some conflicting evidence regarding this alleged confession, it is true that Martin himself testified during the guilt phase of his trial that he never told [C.D.] anything like that. However, given the overwhelming evidence of guilt in this case, as set out in Section III of this Order, it is unlikely that any discrepancy in the testimony of a person who was in jail for failing to pay traffic fines versus the testimony of a person charged with killing his wife had any effect on the jury's sentencing recommendation, much less persuaded 8 of 12 jurors to vote for life [imprisonment] without parole.
"The second issue the Alabama Supreme Court suggests may have affected the `strength of the factual basis' of the jury's sentencing recommendation is `the probable cross-contamination of Martin's clothing.' Again, this Court is of the opinion that this issue had little, if any effect on the jury's sentencing recommendation.
"While there was a question as to whether or not Martin's clothes were `cross-contaminated,' that point was not lost on the jury. Martin's attorneys, [through] the cross-examination of several State witnesses, established that the police incorrectly collected from Martin's home a newspaper saturated with gasoline as well as the clothes Martin was wearing at the time of his wife's murder. The police failed to wear gloves when collecting the evidence and also incorrectly placed the collected items in paper bags instead of collecting them in the preferred waywearing gloves and placing the evidence in sealed tin cans to prevent any fumes from escaping. When the two paper bags containing the evidence were placed in the trunk of a police cruiser not to be removed until the next morning, witnesses testified that it was possible the fumes from the saturated newspaper escaped through the paper bag it was stored in, traveled out into the trunk, and then permeated the other paper bag and Martin's clothes stored therein.
"This Court is of the opinion that testimony about the possible cross-contamination of Martin's clothes did not sway 8 of 12 jurors to vote for life without parole. Whether or not Martin's clothes tested positive for gasoline fumes in no way affected the fact that there was overwhelming evidence to support the two Aggravating Circumstances in this case: (1) that the murder was especially heinous, atrocious, [or] cruel, and (2) that the murder was committed for pecuniary gain. Whether or not Martin's clothes were cross-contaminated does not change the fact that there was overwhelming evidence of Martin's guilt. To the extent that the Alabama Supreme Court may be suggesting that the failure of the police to properly collect this evidence should be considered mitigating evidence escapes this Court. Martin should not benefit because the police, in collecting evidence that was not even exculpatory in nature, failed to follow established procedure in properly packaging it.
"This Court, having participated in and observed all that transpired in this case, is of the opinion that it was defense counsel's penalty phase closing argument that led 8 of the 12 jurors to recommend Martin be sentenced to life in prison without the possibility of parole. After restating the evidence that the jury could consider in mitigation, *779 defense counsel acknowledged that the jury had already found Martin guilty beyond a reasonable doubt as a way to launch into his argument that the case against Martin was totally circumstantial and suggest to the jury that they might possibly have `a lingering doubt in [their] mind[s] about what happened in this case.' R. 2557-58. The end of defense counsel's penalty phase closing argument reads, as follows:
"`Walter Johnny D. McMillian was convicted and sentenced to death in Monroeville, Alabama by Judge Key in this courthouse. He sat on death row for a number of years. He was going to be executed. He got some different lawyers that began to work on the case. And after years it was determined and became absolutely crystal clear that someone had lied on him, like a [C.D.], a snitch. That's what it was, a snitch had lied on him. And he was going to be killed by the State of Alabama. And everybody, Judge Key, Tommy Chatman, the [district attorney], the prosecutor, everybody said we made a mistake, and they turned him loose out of that prison. He's appeared on The Today Show[1] and such because we almost killed an innocent man.
"`In the State of Illinois the Governor has put a prohibition on executions because so many people now are in prison on death row and that by DNA evidence and other things they have found out, wait a minute, the jury made a mistake, he's not guilty. And they have let a number of people out of prison that's been on death row because a mistake was made.
"`If you have a lingering doubt, if you have a lingering doubt, don't, don't, don't sentence this man to death. Because if it is a mistake, we may not catch this one, and an innocent man may die. Don't take that chance. Please, please, follow God's law. Thou shalt not kill. And don't kill this man.'
"R. 2559-60. This Court finds that it was this brilliant but coercive argument by defense counsel that persuaded 8 jurors to recommend life without parole. The jury had already found Martin guilty beyond a reasonable doubt. After defense counsel's closing arguments, some jurors undoubtedly feared the possibility of sentencing Martin to death, and what might happen if they made a mistake. So, 8 of the jurors chose to recommend the sentence of life without parole. That was the only way they saw to completely ensure that they would feel no guilt. While defense counsel's tactics may have worked on the jury, this Court was not swayed by defense counsel's argument."
(C. 26-34.) The trial court properly determined that defense counsel's "residual doubt" argument was not an appropriate sentencing consideration. See Melson v. State, 775 So.2d 857, 898 (Ala.Crim.App. 1999), aff'd, 775 So.2d 904 (Ala.2000).
In Ex parte Taylor, 808 So.2d 1215, 1219 (Ala.2001), the Alabama Supreme Court held that a judge must make specific findings as to his reasons for "giving the jury's recommendation the consideration he gave it." That Court stated:
"Under Alabama's capital-sentencing procedure, the trial judge must make specific written findings regarding the existence or nonexistence of each aggravating *780 circumstance and each mitigating circumstance offered by the parties. § 13A-5-47(d), Ala.Code 1975. In making these findings, the trial judge must consider a jury's recommendation of life imprisonment without parole. See § 13A-5-47(e), Ala.Code 1975 (`in [weighing the aggravating and mitigating circumstances] the trial court shall consider the recommendation of the jury contained in its advisory verdict'). Construing subsection (e) together with subsection (d), we conclude that the trial judge must state specific reasons for giving the jury's recommendation the consideration he gave it."
808 So.2d at 1219 (footnote omitted).
The trial court found as aggravating circumstances that the murder was committed for "pecuniary gain," and that the murder was "especially heinous, atrocious, or cruel compared to other capital offenses." See § 13A-5-49(6) and § 13A-5-49(8), Ala.Code 1975. These findings are supported by the record. The court's finding that the murder was committed for "pecuniary gain" was supported by the jury's verdict during the guilt phase of Martin's trial. The court's finding that the victim's murder was especially heinous, atrocious, or cruel was predicated on the fact that the victim was burned to death, and that she was alive and conscious for a period of time before she died, as established by the medical examiner's testimony. Evidence that a victim was killed by fire and smoke inhalation has been found to meet the definition of a crime that is especially heinous, atrocious, or cruel, i.e., one of "those `conscienceless or pitiless homicides which are unnecessarily torturous to the victim.'" See Dunaway v. State, 746 So.2d 1021, 1040 (Ala.Crim.App. 1998), aff'd, 746 So.2d 1042 (Ala.1999). The trial court found the existence of one mitigating circumstancethat Martin had no significant history of prior criminal activity. This finding was supported by the record.
The trial court addressed in some detail its reasons for overriding the jury's recommendation of life imprisonment without the possibility of parole and sentencing Martin to death. The court noted:
"Taking all of the above into consideration, this Court is still of the opinion that death is the appropriate sentence in this case. In the present case, this Court heard for many days and from many witnesses the horrible evidence presented. This Court observed the witnesses, including the victim's parents and Martin himself, throughout this long trial, which is a statutorily bifurcated proceeding. The process of accepting or rejecting the jury's recommended sentence is an undertaking that most trial judges do not relish. However, under the statutes in question, the trial court is required to accept this responsibility, whether it likes the same or not. It should be obvious that this awesome responsibility is placed in the hands of the trial court because it has firsthand knowledge not only of the case being tried but can also compare it to other capital cases to ensure that the penalty imposed is proper.
"It should be apparent that no jury is in a position to compare the case at hand with other such capital cases. For example, the jury is not in a position to know if this case, compared with other capital cases, is more heinous, atrocious, or cruel in its nature. In Harris v. Alabama, 513 U.S. 504 (1995), the Supreme Court of the United States held, as follows:
"`The Constitution permits the trial judge, acting alone, to impose a capital sentence. It is thus not offended when a State further requires the sentencing *781 judge to consider a jury's recommendation and trusts the judge to give it the proper weight.'
"513 U.S. at 515.
"One of the bases upon which this Court chooses not to follow the jury's life without parole recommendation is the truly heinous nature of the crime. As was set out in this Court's original sentencing order, the murder of Hammoleketh Martin was especially heinous, atrocious, and cruel, because:
"`The evidence was that the defendant's wife Hammoleketh Martin, was burned to death and that she was alive and conscious for a period of time prior to her death and realized that she was being burned alive. This was proven by the testimony of Dr. Leroy Riddick, the State's Medical Examiner. If burning a human being alive is not an example of what is Heinous, Atrocious, or Cruel, then in this Court's opinion these words lack meaning. [Citations omitted.]'
"Can it be argued that a jury could also determine the above facts are especially heinous, atrocious, and cruel as did the trial court? The answer would clearly be they could. Did they need to have Ex parte Kyzer, 399 So.2d 330, 334 (Ala. 1981), read and explained to them in order to make this finding? I think not. There seems to be no doubt that the killing of a victim by fire and smoke inhalation has been found to meet the definition of a crime that is especially heinous, atrocious, and cruel. See Dunaway v. State, 746 So.2d 1021 (Ala.Crim. App.1998), aff'd, 746 So.2d 1042 (Ala. 1999).
"It is, furthermore, clear to this Court that it has a duty and responsibility to determine if the sentence fits the facts when compared with other capital cases. Again, a jury is not in the position to make this determination. In addition, there is no question that an Appellate Court has a duty under Section 13A-5-53(b)(3), Ala.Code 1975, to determine if the sentence as imposed by the trial court is disproportionate or excessive when compared to penalties imposed in similar cases. Surely no one would suggest that a jury should make these comparisons. [Jurors] are simply not equipped with the knowledge to make such comparisons.
"Another consideration of this Court in not adopting the jury's sentencing recommendation is the fact that Martin's motivation to kill his wife was driven by his extreme greed and desire for money. In this case, there can be no question that Martin killed his wife in order to collect some $377,000 in life insurance proceeds. Similar crimes have been punished by death on numerous occasions. Ex parte Scott, 728 So.2d 172 (Ala.1998), cert. denied, 528 U.S. 831 (1999); Sockwell v. State, 675 So.2d 4 (Ala.Crim.App.1993), aff'd, 675 So.2d 38 (Ala.1995), cert. denied, 519 U.S. 838 (1996); Harris v. State, 632 So.2d 503 (Ala.Crim.App.1992), aff'd, 632 So.2d 543 (Ala.1993), aff'd, 513 U.S. 504 (1995).
"Furthermore, this Court had the benefit of reviewing a pre-sentence report before sentencing Martin to death. The jury is in no position to ask for a pre-sentence report to be prepared for [it] prior to fixing [its] recommended punishment. It may well be stretching credulity to assume that a jury, composed of jurors who may be hearing their first criminal case, is in a position to properly weigh the aggravating [circumstances] and mitigating circumstances in arriving at [its] ultimate recommendation. This Court has no doubt that juries conscientiously attempt to balance these factors, but is was recognized *782 by the Legislature from the beginning that this final decision should be in the hands of an experienced jurist and not a jury who may be sitting for the first time.
"In addition, one should not lose sight of the fact that, under legislative mandates, the trial court, while having the right and duty to raise a jury's recommendation from life [imprisonment] without parole to death, likewise has the duty and responsibility, where warranted, to reduce a sentence from death to life [imprisonment] without parole. Nowhere is it written that even if the recommended sentence of death be by a vote of 12 to 0, the trial court, if warranted, may not still reduce the sentence to life [imprisonment] without parole. Also, nowhere is it written that the trial court can simply substitute its judgment for that of the jury's. It is clear to this Court that the reason this sentencing duty was placed in the hands of the trial court was to ensure, or attempt to ensure, uniformity in the sentencing process throughout the State. If the trial court's final sentence must be whatever the jury has recommended, then it is this Court's opinion that this change should come from the Legislature."
(C. 34-40.) As evidenced by the foregoing explanation, the trial court's decision to override the jury's recommendation was amply supported by the evidence.
Subsections 13A-5-53(b) and (c), Ala.Code 1975, require this Court to "explicitly address" the following three questions:
"(1) Whether the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor;
"(2) Whether an independent weighing of the aggravating and mitigating circumstances at the appellate level indicates that death was the proper sentence; and
"(3) Whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant."
Thus, in determining whether the trial court's sentence of death was proper, this Court must independently weigh the aggravating circumstances and the mitigating circumstances, taking into consideration the jury's advisory verdict. See Ex parte Taylor, 808 So.2d at 1220.
The record reflects that Martin's sentence was not imposed under the influence of passion, prejudice, or any other arbitrary factor. See § 13A-5-53(b)(1), Ala. Code 1975. Likewise, our independent weighing of the aggravating circumstances and the mitigating circumstances convinces us that death was the appropriate sentence in this case. See § 13A-5-53(b)(2), Ala.Code 1975. As required by § 13A-5-53(b)(3), Ala.Code 1975, we must also determine whether Martin's death sentence was disproportionate or excessive when compared to the penalties imposed in similar cases. This Court has upheld imposition of the death sentence in similar cases on many previous occasions. See, e.g., Ex parte Scott, 728 So.2d 172 (Ala. 1998), cert. denied, 528 U.S. 831, 120 S.Ct. 87 (1999); Sockwell v. State, 675 So.2d 4 (Ala.Crim.App.1993), aff'd, 675 So.2d 38 (Ala.1995), cert. denied, 519 U.S. 838, 117 S.Ct. 115 (1996); Harris v. State, 632 So.2d 503 (Ala.Crim.App.1992), aff'd, 632 So.2d 543 (Ala.1993), aff'd, 513 U.S. 504, 115 S.Ct. 1031 (1995).
Based on the foregoing, we conclude that the trial court's reasons for overriding the jury's recommendation are sufficient to comply with the dictates of Ex parte Carroll. Accordingly, we affirm the judgment *783 of the trial court resentencing Martin to death.
AFFIRMED.
McMILLAN, P.J., and COBB, BASCHAB, and SHAW, JJ., concur.
NOTES
[1] The Today Show is an early morning television news and entertainment show that at the time of this opinion was broadcast daily.